# EXHIBIT 3

# FEDERATED DEPARTMENT STORES INSURANCE COMPANY, INC.

### C/O AON INSURANCE MANAGERS
### 55 EAST 52ND STREET
### NEW YORK, NY 10055

## Master Property Insurance Policy

## FOR

## FEDERATED DEPARTMENT STORES, INC.

## Policy No. 496-1-PRO 001

CONFIDENTIAL

**FEDERATED DEPARTMENT STORES**
**INSURANCE COMPANY, INC.**

55 East 52nd Street, 38th Floor

New York, NY 10055

# FEBRUARY 1, 2005 TO FEBRUARY 1, 2006
## GENERAL CONDITIONS

1. **INSURED:**

   **FEDERATED DEPARTMENT STORES, INC.**, and any and all incorporated or unincorporated business, or trusts now or hereafter owned or operated or controlled by our subsidiary to either Federated Department Stores, Inc., or any subsidiary or affiliate wholly or partially controlled by Federated Department Stores, Inc. through ownership or management thereof.

   Mailing Address:     Federated Department Stores, Inc.
                        7 West Seventh Street
                        Cincinnati, OH 45202-2471

2. **PREMIUM:**

   The premium for the term of this policy is $15,020,000 (being $13,480,000 of Property Premium; $1,040,000 of Certified Terrorism Premium; & $500,000 of Non-Certified Terrorism Premium) and is based on a statement of total values at inception in the amount of:

   Parts 1 and 2

   Total Values          $28,669,324,396

3. **LOSS PAYABLE:**

   Loss, if any, shall be adjusted with and made payable to **FEDERATED DEPARTMENT STORES, INC.**, or order, whose receipt shall constitute a release in full for all liability under this policy as regards such loss.

4. **POLICY TERM:**

   In consideration of the premium charged, this policy shall be effective from February 1, 2005 at 12:01 a.m. (standard time at location of property), and shall continue in full force and effect until canceled in accordance with the provisions of the Cancellation Clause of these General Conditions or until February 1, 2006 at 12:01 a.m. (standard time at location of property), whichever first occurs.

CONFIDENTIAL                                                   FDS 0913 0001310

5.  **COVERAGE:**

    This policy insures the following Parts and any extensions which may be endorsed to this policy thereafter:

    | | | |
    |---|---|---|
    | Property Damage | - | Part 1 |
    | Time Element | - | Part 2 |
    | Gross Earnings | - | Part 2A |
    | Extra Expense | - | Part 2B |
    | Rental Income | - | Part 2C |
    | Leasehold Interest | - | Part 2D |

6.  **TERRITORIAL LIMITS:**

    Except as excluded herein, this policy covers all the property and interests insured hereunder wherever located within the United States of America, its possessions or territories, the District of Columbia, Puerto Rico, Guam, and Canada.

7.  **LIMITS OF LIABILITY:**

    This Company shall not be liable for more than its proportion of $1,000,000,000 per occurrence and subject to the following sublimits:

    The following are Program Limits of Liability and in no way increase the Insurers Limit of Liability as stated above.

    | | | |
    |---|---|---|
    | a. | $300,000,000 | Per Occurrence, and in the aggregate, as respects losses caused by Earthquake. |
    | b. | $300,000,000 | Per Occurrence, and in the aggregate, as respects losses caused by flood. |
    | c. | $450,000,000 | Per occurrence as insured by the Automatic Acquisition extension except: |
    | | | $50,000,000 Per occurrence as respects Coastal Locations and/or locations in California areas designated as Earthquake Zones A or B. |
    | d. | $450,000,000 | Per occurrence at any location not listed on the Schedule of Locations except: |
    | | | $50,000,000  Per occurrence as respects Coastal Locations and/or locations in California areas designated as Earthquake Zones A or B. |
    | e. | $200,000,000 | Per occurrence as respects Property in the incidental course of construction. |
    | f. | $200,000,000 | Per occurrence as respects Demolition. |

CONFIDENTIAL

| | | |
|---|---|---|
| g. | $200,000,000 | Per occurrence as respects Increased Cost of Construction. |
| h. | $200,000,000 | Per occurrence as respects Delayed Opening. |
| i. | $200,000,000 | Per occurrence as respects Soft Costs. |
| j. | $25,000,000 | Per occurrence as respects Extra Expense. |
| k. | $25,000,000 | Per occurrence as respects Contingent Time Element. |
| l. | $25,000,000 | Per occurrence as respects Purchased Services, subject to an eight (8) hour qualifying period for both property damage and resulting time element. |
| m. | $25,000,000 | Per occurrence as respects Accounts Receivable. |
| n. | $25,000,000 | Per occurrence as respects Valuable Papers. |
| o. | $25,000,000 | Per occurrence as respects Media Replacement. |
| p. | $25,000,000 | Per occurrence as respects Leasehold Interest. |
| q. | $25,000,000 | Per occurrence as respects Royalties. |
| r. | $25,000,000 | Per occurrence as respects Brands and Labels. |
| s. | $25,000,000 | Per occurrence as respects Mall Property Time Element. |
| t. | $5,000,000 | Or 25% of loss, whichever is greater, per occurrence as respects Debris Removal. |
| u. | $5,000,000 | Per occurrence as respects property in transit and resulting time element. |
| v. | $5,000,000 | Per occurrence as respects Fine Arts. |
| w. | $2,500,000 | Per occurrence as respects Expediting Expense. |
| x. | $500,000 | Per occurrence, and in the aggregate, per location as respects Pollutant Cleanup of Land and Water. |
| y. | $100,000 | Per occurrence, per person as respects personal property of employees and customers. |
| z. | $250,000 | Per occurrence as respects Professional/Claim Preparation Fees. |
| aa. | $200,000,000 | Per occurrence, and in the aggregate, as respects Terrorism, considered Certified Acts of Terrorism designated by the Terrorism Risk Insurance Act (TRIA) of 2002. |
| bb. | $100,000,000 | Per occurrence, and in the aggregate, as respects Terrorism, considered Non-Certified Acts of Terrorism designated by the Terrorism Risk Insurance Act (TRIA) of 2002. |

APPLICATION OF LIMITS OF LIABILITY – This policy may contain sub-limits applicable to specific locations or specific coverages or specific causes of loss. Such limits shall be the total payable as a result of a single Occurrence (or an aggregate of certain Occurrences where so specified) and neither the policy limit nor any sub-limit shall be increased by the application of one or more sub-limits.

However, it is agreed that the limits in a. and b. above, are also annual aggregate limits applying separately to Flood and Earthquake (as defined in this policy) and the

CONFIDENTIAL

Companies' liability for Flood or Earthquake shall not exceed this limit in any one policy year. This limitation shall not apply to loss or damage by an ensuing peril not otherwise excluded from this policy (examples include but are not limited to fire, explosion and sprinkler leakage).

Additionally, if during the Policy Term the Insured experiences a loss or losses which exhaust $100,000,000 of the California Earthquake aggregate limits, the Insured, at their option, may reinstate the initial $100,000,000 of all coverages under this Policy (hereafter termed the "reinstatement") according to the following conditions:

a.   the premium for the initial $100,000,000 of coverage shall be considered fully earned as of the effective date of the reinstatement;

b.   the reinstatement will be for a new twelve month Policy Term effective from the date of the reinstatement;

c.   the reinstatement shall not give any coverage for loss or losses which exhaust the initial $100,000,000 of coverage;

d.   the reinstatement shall take the form of a new policy replacing the initial $100,000,000 of coverage of this Policy and the reinstatement shall be subject to all terms, conditions, exclusions, and limitations as contained in this Policy.  Any remaining limits from this policy shall apply in excess of the reinstatement;

e.   the premium for the reinstatement shall be based on 120% of the premium charged for the initial $100,000,000 of coverage under this policy pro rata for the new twelve month policy term; said reinstatement premium will be $9,000,000;

f.   the Insured shall notify the Insurers in writing of their intent to exercise this reinstatement option within 60 days after the exhaustion of the initial $100,000,000.

However, in the event that the reinstatement is exercised after December 31, 2005, the reinstatement limit shall be subject to the renewal of Companies treaties.

The Additional Premium charged shall be calculated in proportion to the reinstatement limit.

PRIORITY OF PAYMENTS - It is hereby understood and agreed that notwithstanding anything contained herein to the contrary that in the event of a claim hereunder which involves more than one interest and/or coverage and/or peril; it shall be at the sole option of the Insured to apportion recovery under this Policy when submitting final proof of loss, subject to the overall amount of claim not exceeding the overall limit of liability contained herein for any one loss.

For the purpose of attachment of coverage for excess layers, it is further agreed that loss involving any interest and/or peril covered in primary or underlying excess layers, but not covered in higher excess layers, shall be recognized by such excess layers as eroding or

CONFIDENTIAL                                                                          FDS 0913 0001313

exhausting the occurrence limits of the primary and/or underlying excess layer(s). Nothing herein, however, shall be deemed to extend coverage in such layers(s) to include loss from any interest and/or peril not covered in the excess layer(s) itself.

STEP DOWN / DROP DOWN WORDING (applicable to excess layers only) - In determining the amount of any loss or damage for which this policy is excess, the total loss caused by any combination of loss or damage, all of which is insured against under the primary policy, shall be used even though such loss or damage is not insured against under this excess policy.

1.    Any recoveries made under the primary policy shall first apply to loss or damage not insured against by this policy. Upon exhaustion of the primary policy limits, this policy shall apply in excess of the amount attributed to the primary policy as respects loss or damage insured hereunder subject to the limit of this policy.

2.    It is further agreed, in the event the flood and/or earthquake annual aggregate limits of any underlying policy are diminished or exhausted in any one policy year, the coverage provided under this policy for flood and/or earthquake shall apply as excess of any undiminished or unexhausted limits subject to the underlying policy deductibles.

8.    **DEDUCTIBLES:**

The Company(ies) shall only be liable for their proportion of each loss separately occurring or from the sum of all losses arising from the same Occurrence excess of $15,000,000 except the Company(ies) shall be excess of the following specified perils/coverages:

$50,000,000 as respects Earthquake within the State of California.

In the event that one Occurrence gives rise to more than one loss to which different deductibles are applicable, the total amount to be deducted shall not exceed the largest deductible applicable.

Joint Deductible: Notice is accepted that there may be a separate insurance policy(ies) in force covering the same interest(s) as covered by this policy for loss or damage caused by the perils insured against herein, and that such policy(ies) contain(s) a deductible provision. It is understood and agreed that in each case of loss or damage deemed a single Occurrence and involving liability under such separate insurance policy(ies) and this policy on the basis of the loss that would have been payable under each without regard to the deductibles applicable separately under each policy. With respect to boiler and machinery coverage placed in conjunction with this property program, the total amount to be deducted from the loss shall be the largest deductible applicable.

9.    **PERILS INSURED:**

CONFIDENTIAL                                                    FDS 0913 0001314

This policy insures against all risks of direct physical loss or damage, except as hereinafter excluded, occurring during the Policy Period.

10.   **PERILS EXCLUDED:**

This policy does not insure against:

    a.    1.   Warlike action in time of peace or war, including action in hindering, combating or defending against an actual, impending or expected attack (I) by any government or sovereign power (dejure or de facto), or by any agent or authority maintaining or using military, naval or air forces, or (ii) by military, naval or airforces.

        2.   Any weapon of war employing atomic fission, atomic fusion or radioactive force whether in time of peace or war.

        3.   Insurrection, rebellion, revolution, civil war, usurped power or action taken by governmental authority in hindering, combating or defending against such an occurrence; seizure or destruction under quarantine or Customs regulations; confiscation expropriation and nationalization by order of any government or public authority, or risks of contraband or illegal transportation or trade.

In no event shall this policy cover any loss, damage or expense caused by or resulting from any weapon of war employing atomic fission or radioactive force whether in time of peace or war.

  b.  Nuclear reaction, nuclear radiation or radiation or radioactive contamination, all whether controlled or uncontrolled, or due to any act or condition incidental to any of the foregoing, and whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to or aggravated by the peril(s) insured against in this policy.

  c.  Ordinary wear and tear, gradual deterioration, inherent vice, latent defect, insects and vermin, depletion, erosion, corrosion, rust, wet rot, dry rot, mold, unless there is ensuing physical loss or damage from fire or explosion only.

  d.  Errors in design, faulty workmanship or use of faulty materials, unless there is ensuing physical loss or damage from fire or explosion only.

  e.  Unexplained or mysterious disappearance of any property, or shortage disclosed by audit or upon taking inventory.

  f.  Delay or loss of market.

  g.  Dampness or dryness of atmosphere, or extremes or changes of temperature,

---

CONFIDENTIAL        FDS 0913 0001315

unless there is ensuing physical loss or damage from fire or explosion only.

h.  Any fraudulent, dishonest or other act intended to result in the financial gain of the Insured or any associate, proprietor, partner, director, trustee, officer, employee or agent of any Insured.

i.  Loss or damage due to the discharge, dispersal, seepage, migration, release or escape of Pollutants.

j.  Any increase of loss occasioned directly or indirectly from:

1.  enforcement of any law, ordinance, regulation or rule regulating or restricting the construction, installation, repair, replacement, demolition, occupancy, operation or other use of property on the Insured's premises except as provided in the Demolition and Increased Cost of Construction extensions in the Property Part of this policy; or

2.  interference at the Insured's premises, by strikers or other persons, with rebuilding, repairing or replacing property or with the resumption or continuation of business.

k.  Explosion in or of the following property owned, operated or controlled by the insured: steam boilers, including equipment attached to and forming a part thereof; steam turbines; steam engines; steam pipes interconnecting any of the foregoing; or gasturbines; except that liability is specifically assumed for loss resulting from explosion of accumulated gases or unconsumed fuel within the firebox (or the combustion chamber) of any fired vessel, other than gas turbines, or within the flues or passages which conduct the gases of combustion therefrom.

l.  Rupture, bursting, cracking, burning or bulging of: steam boilers including equipment attached to and forming a part thereof, steam turbines; steam engines; steam pipes interconnecting any of the foregoing; hot water boilers or other equipment for heating water; pressure vessels including equipment attached to and forming a part thereof; or, gas turbines.

m.  Mechanical or machinery breakdown, including rupture or bursting caused by centrifugal force.

n.  Electrical injury or disturbance to electrical appliances, devices, fixtures, wiring, or other electrical or electronic equipment caused by electrical currents artificially generated.

o.  Strikes, Riots and Civil Commotion

CONFIDENTIAL                                                                 FDS 0913 0001316

p.  Loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with the actual or threatened malicious use of pathogenic or poisonous biological or chemical materials regardless of any other cause or event contributing concurrently or in any other sequence thereto.

q.  Settling, cracking, shrinking, bulging, or expansion or foundations, floors, pavements, walls, ceilings and roofs, unless there is ensuing physical loss or damage from a peril insured hereunder and then this policy shall cover such ensuing loss or damage.

With respects to Paragraphs k. through n. this policy does not insure against resulting damage to property caused by such Occurrences except damage from resulting fire, water or other means to extinguish a fire, or combustion explosion outside any of the property described in this exclusion.

11.  **DEFINITIONS:**

The following terms wherever used in this policy shall mean:

a.  **Earthquake**

The term "earthquake" shall mean damage caused directly by earthquake, landslide, subsidence, volcanic eruption or any other earth movement (examples include but are not limited to cracking, crumbling and collapse) except mudslide or mud flow caused by accumulation of water or under the ground.

It is understood and agreed that in respect of earthquake or earth movement, the term "occurrence" shall be construed to mean all loss or losses sustained by the Insured during a continuous period of 72 hours, but no two such 72-hour periods shall overlap. This policy does not insure against any loss caused by any earthquake/earth movement occurring before the effective date of this policy. However, the Company(ies) will be liable for any losses occurring for a period of up to 72 hours after the expiration of this policy, provided that the first earthquake/earth movement occurs prior to the date and time of the expiration of this policy.

b.  **Flood**

The term "flood" shall mean a general and temporary condition of partial or complete inundation of normally dry land areas from:

1.  the overflow of inland or tidal waters;

CONFIDENTIAL                                                        FDS 0913 0001317

2.  the unusual and rapid accumulation or runoff of surface waters from any source;

3.  mudslide or mudflow caused or precipitated by accumulation of water on or under the ground.

However, the Company(ies) will be liable for any losses occurring for a period of up to 72 hours after the expiration of this policy, provided that the first flood occurs prior to the date and time of the expiration of this policy.

c.  **Occurrence**

The term "occurrence" shall mean a loss or a series of losses which are attributable directly to an event, accident, cause, or disaster, or to one series of similar events, accidents, causes, or disasters, and all such losses shall be added together and the total amount of such losses shall be treated as one occurrence.

d.  **Transit**

The term "in transit" shall attach and cover continuously on incoming, outgoing, and refused or returned shipments from the time the property is moved for the purpose of loading and continuously thereafter while awaiting and during loading and unloading and in temporary storage on any conveyance intended for use for any outbound or used for any inbound shipment, including during deviation and delay, until safely delivered and accepted into place of final destination.

e.  **Warlike Actions**

The term "warlike action" shall mean open hostilities carried on by entities that constitute governments at least de facto in character, evidenced by actions of military forces that are accepted as acts of war by the highest political authority in the jurisdiction affected.

f.  **Raw Stock**

Materials and supplies in the state in which the Insured receives them for conversion by the Insured into finished stock including supplies consumed in such conversion or in the service rendered by the insured, at the location(s) covered herein.

g.  **Stock in Process**

---

CONFIDENTIAL                                          FDS 0913 0001318

Raw stock which has undergone any aging, seasoning, machining, mechanical or other processes of manufacture but which has not become finished stock.

h. **Merchandise**

Goods which are not the product of manufacturing operations conducted by the Insured but which are other goods kept for sale by the Insured.

i. **Finished Stock**

Stock manufactured by the Insured which in the ordinary course of the Insured's business is ready for packing, shipment or sale.

j. **Normal**

The condition that would have existed had no loss occurred.

k. **Contributing Properties**

Facilities not owned or operated by the Insured that deliver goods or services directly to the Insured or to others for the account of the Insured.

l. **Recipient Properties**

Facilities not owned or operated by the Insured to which the Insured directly provides goods or services.

m. **Time Element**

Business Interruption, Extra Expense, Rental Income, and Leasehold Interest.

n. **Pollutants**

Any solid, liquid, gaseous or thermal irritant or contaminant, including, but not limited to, vapor, soot, fumes, acids, alkalis, chemicals, bacteria, fungi, virus, mold, spores, vaccines and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

o. **Schedule of Locations**

Federated Master Property Policy 2005-2006                11

CONFIDENTIAL

Schedule of locations attached to this policy or on file with the Company(ies).

p. **Coastal Location**

Any location within one mile of the coast.

12. **SPECIAL PROVISIONS:**

This policy covers loss or damage to property:

a. Sold and shipped by the Insured under terms of F.O.B. point of origin or other terms usually regarded as terminating the shippers responsibility short of points of delivery.

b. Arising out of any unauthorized person(s) representing themselves to be the proper party(ies) to receive goods for shipment or to accept goods for delivery.

c. Occasioned by the acceptance by the Insured or its agents or customers of fraudulent bills of lading, shipping and delivery orders or similar documents.

13. **PERMISSION IS GRANTED:**

Permission is granted to cease operations or remain vacant or unoccupied as occasion may require for up to 120 consecutive days without giving notice to the Company(ies).

14. **WAIVER OF COMPANY CONDITIONS:**

The terms and conditions of this form and endorsements attached thereto supersede those of the policy to which it is attached. Where there are no superseding form conditions, the policy conditions apply.

15. **TITLES OF PARAGRAPHS:**

The titles of the various paragraphs of this policy and endorsements attached hereto are inserted solely for convenience of reference and shall not be deemed in any way to limit or affect the provisions to which they relate.

16. **LOSS CLAUSE:**

Any loss hereunder shall not reduce the amount of this policy except in respect to those losses which are subject to aggregate limitations.

CONFIDENTIAL                    --                    FDS 0913 0001320

17.   **ARBITRATION:**

In case the Insured and the Company(ies) fail to agree as to the amount of loss or damage, each shall, on the written demand of either, select a competent and disinterested appraiser within twenty (20) days, and the appraisal shall be made at a reasonable time and place. The appraisers shall first select a competent and disinterested umpire, and failing for fifteen (15) days to agree upon such umpire, then on request of the Insured or the Company(ies) such umpire shall be selected by a judge of a court of record in the state in which the property sustaining loss is located.

The appraisers shall then appraise the loss and damage, stating separately sound value and loss or damage to each item; and failing to agree shall submit their differences only to the umpire. An award in writing so itemized, of any two when filed with the Company(ies) shall determine the amount of sound value and loss or damage. Each appraiser shall be paid by the party selecting him and the expense of appraisal and umpire shall be paid by the parties equally.

18.   **SUE AND LABOR:**

This policy covers:

a.     Reasonable and necessary costs incurred for actions to temporarily protect or preserve insured property, provided such actions are necessary due to actual, or to prevent immediately impending insured physical loss or damage to such insured property.

b.     Reasonable and necessary:

    1.     Fire department fire fighting charges imposed as a result of responding to a fire in, on or exposing the insured property;

    2.     Costs incurred of restoring and recharging fire protection systems following an insured loss; and

    3.     Costs incurred for the water used for fighting a fire in, on or exposing the insured property

This extension is subject to the deductible provisions that would have applied had the physical loss or damage occurred. However, this provision does not increase the amounts or limits of insurance provided by this policy.

19.   **SUIT AGAINST THE COMPANY:**

Any action or proceeding against the Company(ies) for the recovery of any claim under or by virtue of this insurance shall not be barred if commenced within the time prescribed therefore in the statues of the state having jurisdiction or 12 months from date of loss, whichever is greater.

Federated Master Property Policy 2005-2006                    13

20.   **ASSIGNMENT OF POLICY:**

Assignment of this policy shall not be valid except with the written consent of the Company(ies).

21.   **SUBROGATION/WAIVER OF SUBROGATION:**

In the event of payment under this policy, the Company(ies) shall be subrogated to all the Insured's rights of recovery therefore against any person or organization and the Insured shall execute and deliver instruments and papers and do whatever else is necessa**ry to secure such rights.**

**The Insured, without affecting their rights under this policy, may waive their recourse against and release any person, firm or corporation for loss or damage to the property insured by this policy, providing that such waiver or release shall have been made prior to any such known loss or damage and the waiver or release is in writing. The Company(ies) hereby waived and release any and all direct rights and recourse they may have against any subsidiary, affiliated or associated company of the Insured or any other party as required under the terms and conditions of any written lease, contract or agreement.**

22.   **CANCELLATION:**

This policy may be canceled by the Insured by mailing or delivering to the insurers at the address shown on the policy stating when such cancellation shall be effective. Return premium following cancellation by the Insured shall be calculated on a short-rate basis. This policy is cancelable by the Insurers for in which case coverage provided by the Policy shall cease ninety (90) days [ten (10) days for non-payment of premium] after written notice has been mailed or delivered by the Insurers. Return premium following cancellation by the Insurers shall be calculated on a pro-rata basis. The mailing or delivery of notice as aforesaid shall be sufficient proof of notice and the date of cancellation stated in the notice shall become the end of the period of insurance.

23.   **CLAIMS NOTIFICATION:**

The Risk Management Department of the Insured upon knowledge of any Occurrence likely to give rise to a claim hereunder, as soon as it is reasonable practicable shall give notice thereof to the Company(ies) directly or through their authorized representative.

24.   **VERIFICATION OF CLAIM:**

The Insured, as often as required, shall exhibit to any person designated by the Company(ies) all that remains of any property herein described, and shall produce for examination all books of account, bills, invoices and vouchers, and any and all

---

CONFIDENTIAL                                                    FDS 0913 0001322

documents pertaining to the interest of the Insured hereunder, or a certified copy thereof if originals be lost, at such reasonable time during the Insured's normal business hours and place as may be designated by the Company(ies) or their representatives, and shall permit extracts and copies thereof to be made.

25.   **ADJUSTMENT, PROOF AND PAYMENT OF LOSS:**

All losses shall be adjusted by Joseph Slane, Engle Martin & Associates, Inc., 1012 West 8th Avenue, King of Prussia, PA 19406. A detailed proof of loss shall be filed with the Company(ies) as soon as practicable. All adjusted claims shall be paid to the Insured within thirty (30) days after acceptance of the proof of loss. It is understood and agreed that the conditions of this policy relating to the time within which the Insured must file proofs of loss and/or commence suit or action for the recovery of any claims or loss, damage or expense are hereby waived so long as the right of recovery of the Company(ies) is not prejudiced thereby.

26.   **PARTIAL PAYMENT:**

In the event of a loss covered by this policy, it is understood and agreed that the Company(ies) shall allow a partial payment(s) of claim subject to the policy provisions and the normal company adjustment process. To obtain said partial claims payment, the Insured shall submit an acceptable partial proof of loss with supporting documentation.

27.   **NO CONTROL CLAUSE:**

This insurance shall not be affected by failure of the Insured to comply with any provisions of this policy in any portion of the premises over which the Insured has no control.

28.   **CONTRIBUTING INSURANCE:**

This insurance shall contribute in accordance with the conditions of this policy only with other contributing insurance as defined. "Contributing insurance" is insurance written similar plans, terms, conditions and provisions for Federated Department Stores, Inc.

29.   **EXCESS INSURANCE:**

Permission is granted the Insured to have excess insurance over the limits of liability set forth in this policy without prejudice to this policy and the existence of such insurance, if any, shall not reduce any liability under this policy. "Excess insurance" is insurance over the limit of liability set forth in this policy.

30.   **UNDERLYING INSURANCE:**

Permission is granted the Insured to have underlying insurance and the existence of such

---

CONFIDENTIAL                                                                                                      FDS 0913 0001323

insurance, if any, shall not reduce any liability under this policy. "Underlying insurance" is insurance on all or any part of the deductible and against all or any of the perils covered by this policy, including declarations of value to a carrier for hire.

If the limits of such underlying insurance exceed the deductible amount which would apply in the event of loss under this policy, then that portion which exceeds such deductible amount shall be considered "other insurance."

31.   **OTHER INSURANCE:**

Except for insurance by the contributing insurance clause, the excess insurance clause or the underlying insurance clause, this policy shall not cover to the extent of any other insurance, whether prior or subsequent hereto in date, and whether directly or indirectly covering the same property against the same perils. The Company(ies) shall be liable for loss or damage only to the extent of that amount in excess of the amount recoverable from such other insurance.

32.   **CERTIFICATES OF INSURANCE:**

   a.   If specified by the Certificates, parties to whom a Certificate of Insurance has been issued are automatically added to this policy upon issuance of said Certificate, either as Additional insureds or as Loss Payees, or both, in accordance with the terms and conditions of said Certificate. Permission is granted for Aon Risk Services to issue such certificates.

   b.   It is understood and agreed that in the event of a cancellation notice affected by the Company(ies), the Company(ies) will endeavor to send notice of such intent to each certificate holder as required by the Certificate of Insurance endorsed herein.

33.   **PREMIUM ADJUSTMENT:**

It is understood and agreed that in the event of additional locations or specific schedules of locations being added at any one time with a total value in excess of $450,000,000, except in excess of $50,000,000 as respects Coastal Locations and/or locations in areas of California designated as Earthquake Zones A or B, the Company (ies) may elect to charge a pro-rata additional premium based on the average rate from the date of such addition. Furthermore, in the event of a location or specific schedules of locations being deleted from coverage hereunder with a total value in excess of $450,000,000, except in excess of $50,000,000 as respects Coastal Locations and/or locations in areas of California designated as Earthquake Zones A or B, the Insured may elect to order a pro rata return premium based on the average rate, from the date of such deletion.

The acceptance by the Company(ies) of such reports and the premium calculated thereon will not alter, vary or increase the Limit(s) of Liability as stated herein.

CONFIDENTIAL

FDS 0913 0001324

Additional locations or deletions below $450,000,000 or $50,000,000 as respects Coastal Locations and/or locations in areas of California designated as Earthquake Zones A or B, at any one time will not cause any additional or returned premium.

34.   **AUTOMATIC ACQUISITION:**

This policy is extended to cover real and personal property, Time Element and Leasehold Interest which may be acquired or leased by the Insured or otherwise become at risk of the Insured subject to the limit of liability provided herein. Coverage shall commence when the Insured first acquires an insurable interest and shall cease on the expiration date of this policy or, as respects Coastal Locations and/or locations in California areas designated Earthquake Zones A or B, 120 days after the date of acquisition if not reported to the Company(ies) for premium adjustment in accordance with the provisions of Section 33, PREMIUM ADJUSTMENT. Locations or specific schedules of locations in excess of $450,000,000/$50,000,000 (as above) to be agreed within 120 days.

35.   **AGREED AMOUNT CLAUSE:**

It is understood and agreed that this policy is not subject to coinsurance.

36.   **PROFESSIONAL/CLAIM PREPARATION FEES:**

This policy is extended to include fees subject to the limit of liability herein, payable to auditors, accountants, lawyers, architects, engineers, or other such professionals, but not the Insured's employees or Aon Risk Services personnel, for producing and certifying particulars or details of the Insured's business required by the Company(ies) in order to arrive at the loss payable under this policy in the event of a claim, but such amount shall be a part of, and not in addition to, the limit per Occurrence specified in this policy. This coverage applies only to fees incurred in establishing the amount of a loss, liability for which is otherwise accepted by the Company(ies) and shall not included fees payable to lawyers for the purpose of bringing suit against the Company(ies).

37.   **CONSEQUENTIAL LOSS:**

In the event of direct physical loss and/or damage to any insured property situated at insured locations by reason of any peril insured herein or as may be endorsed hereto, results in a sequence of events which causes loss and/or damage to other insured property situated at insured locations, this policy will cover loss and/or damage.

38.   **JOINT LOSS AGREEMENT:**

In the event there is a disagreement between this Insurer and other Insurers with respect to:

---

CONFIDENTIAL                                                                 FDS 0913 0001325

a.  When there are separate Property policy(s), Boiler and Machinery policy(s) and Excess Earthquake policy(s) in effect, and damage occurs to Property insured under one or all of these policies;

b.  The extent of participation of these policy(s), as to whether there is coverage or as to the amount of loss to be paid, if any, by each Insurer under its own policies;

The Insurers shall, upon acceptance of signed proof of loss from the Insured, pay to the Insured, one-half, or one-third (as appropriate) of the amount of loss which is in disagreement, but in no event more than the Insurers would have paid if there had been no other insurance policy in effect, subject to the following:

c.  The amount of loss which is in disagreement, after making provisions for any undisputed claims payable under said policies, is limited to the minimum amount remaining payable under either the other insurance policy(s) or this policy.

d.  Such other Insurer(s), or group of Insurers, shall simultaneously pay to the Insured one half, or one-third (as appropriate) of said amount which is in disagreement.

The Provisions of this clause apply only if all of the following requirements are met;

1.  The Boiler and Machinery policy(s) and Excess Earthquake policy(s) carried by the Named Insured, insuring the Covered Property, contain a similar provision at the time of loss or damage, with substantially the same requirements, procedures and conditions as contained herein.

2.  The damage to the Property insured was caused by a loss for which;

    a.  Both the Boiler and Machinery insurer(s) and/or Excess Earthquake Insurer(s) and Property Insurer(s) admit to liability for payment under the respective policies or;

        1)  The Boiler and Machinery Insurer(s) and/or Excess Earthquake Insurer(s) do not admit to any liability for payment, while this policy's Insurer's contend that:

            (a)  All liability exists under one or both of the other policies; or

            (b)  Some liability exists under all of the policies (including this policy).

        2)  Insurers do not admit to any liability for payment, while Boiler and

CONFIDENTIAL                                        FDS 0913 0001326

Machinery insurer(s) and/or Excess Earthquake Insurer(s) contend that:

(a)   All liability exists under one or both of the other policies; or

(b)   Some liability exists under all of the policies (including this policy).

3)   All of the Insurers (Boiler and Machinery, All Risk Property and Excess Earthquake):

(a)   Do not admit to any liability for payment; and

(b)   Contend that some or all of the liability exists under the other Insurer's policy/ies; and

3.   The total amount of the loss is agreed to by the Insured and the Insurer(s).

e.   The payments by the Insurers hereunder and acceptance of the same by the Insured signify the agreement of the Insurers, or group of Insurers, to submit to and proceed with Arbitration within ninety (90) days of such payments.

Such arbitration shall be initiated at the written request of either Insurer, or group of Insurers

In the event of a disagreement between this Insurer and one other Insurer, the following process shall be adhered to:

An arbitrator shall be chosen by each Insurer and the two chosen shall choose the third.

If either Insurer, or group of Insurers, fails to appoint an arbitrator within thirty (30) days of being requested to do so by the other Insurer, or group of Insurers, the requesting Insurer, or group of Insurers, may choose both arbitrators who shall choose the third.

In the event the two arbitrators are unable to agree upon the third arbitrator within sixty (60) days of their appointment, the third arbitrator shall be selected from a list of individuals, three named from each arbitrator, by a judge having jurisdiction in the geographical area in which the arbitration is to take place.

Each Insurer, or group of Insurers, shall bear the expenses of their own arbitrator and shall share equally the expenses of the third arbitrator. The majority decision of the arbitrators shall be final, binding and nonappealable.

CONFIDENTIAL

FDS 0913 0001327

In the event of a disagreement between this Insurer and both the Boiler and Machinery Insurers and the Excess Earthquake Insurers, the following process shall be adhered to:

An arbitrator shall be chosen by each Insurer.

If any Insurer, or group of Insurers, fails to appoint an arbitrator within thirty (30) days of being requested to do so by any other Insurer, or group of Insurers, the requesting Insurers, or group of Insurers, may choose the outstanding arbitrators required.

Each Insurer, or group of Insurers, shall bear the expenses of their own arbitrator. The majority decision of the arbitrators shall be final, binding and non-appealable.

All arbitrators shall have no personal or financial interest in the parties or the outcome of the arbitration. The arbitration panel shall convene within forty- five days of the selection of the third arbitrator.

f.      Acceptance by the Insured of sums paid pursuant to the provisions of this clause, including an arbitration award, shall not operate to alter, waive, surrender or in anyway affect the rights of the Insured against any of the Insurers.

g.      The Insurer(s) found responsible for the greater percentage of the ultimate loss must return the excess contribution to the other Insurer(s). Arbitration expenses will be apportioned between Insurers on the same basis that the ultimate loss is apportioned.

## 39.   **ERRORS AND OMISSIONS:**

Any unintentional error or omission made by the Insured shall not void or impair the insurance hereunder. Such error or omission shall be reported as soon as reasonably possible after discovery by the Insured's home office insurance department.

CONFIDENTIAL                                                                                    FDS 0913 0001328

# PART I

## REAL AND PERSONAL PROPERTY

1. **COVERAGE**:

    Except as hereinafter excluded, this policy covers the following property:

    a.  Real and personal property of every description, except as excluded in paragraph 3. Interest and Property Excluded, which is owned, leased, rented, used, by the Insured, provided such intention is agreed to by the Insured (whether written or oral) prior to loss, or as may be acquired in accordance with the Automatic Acquisition Clause herein, or which the Insured may otherwise be required to insure, including buildings in the course of incidental construction, alterations, additions and/or repair. Furthermore, such locations in the course of incidental construction, alterations, additions and/or repair must be reported to underwriters.

    b.  All real and personal property of others for which the Insured has declared values and may be liable or for which the Insured may assume liability or agree to insure prior to loss, all while in the custody of the Insured;

    c.  Improvements and betterments to buildings not owned by the Insured. The Company(ies) agrees to accept and consider the Insured, in the event of loss, in the position and role of unconditional owner of improvements and betterments made to buildings rented or leased to the Insured.

    d.  At the Insured's option, personal property of others, directors, employees, and customers of the Insured while at premises of the Insured.

2. **ELABORATION OF COVERAGE**:

    This policy includes, but is not limited to, coverage for:

    a.  Personal property of every description, (including interest in F.O.B. or other shipments which is hereunder admitted) and the interest(s) of the Insured and its sales agents in property whether owned by the Insured or its sales agents;

    b.  Electronic and/or data processing equipment which is the property of the Insured or others in the care custody or control of the Insured for which the Insured is liable or may have assumed liability or agreed to insure prior to loss;

    c.  Valuable papers, records, records on media, tapes, cards, drums and similar items;

---

CONFIDENTIAL          FDS 0913 0001329

    d.   Accounts receivable including:

1.       All sums due the Insured from customers provided the Insured is unable to effect collection thereof as the direct result from a peril not otherwise excluded;

2.       Interest charges on any loan to offset impaired collections pending repayment of such sums made uncollectable from a peril not otherwise excluded;

3.       Collection expenses in excess of normal collection costs and made necessary from a peril not otherwise excluded;

4.       Other expenses, when reasonably incurred by the Insured in reestablishing records of accounts receivable following such loss or damage from a peril not otherwise excluded.

For the purpose of this coverage, credit card and company charge media shall be deemed to represent sums due the Insured from customers, until such charge media is delivered to the credit card company.

If the Insured cannot more accurately establish the total amount of accounts receivable outstanding as of the date of such loss, the amount shall be computed as follows:

5.       The monthly average of accounts receivable during the last available twelve months, together with collection expenses in excess of normal collection costs and made necessary because of such loss or damage, and together with reasonable expenses incurred in re-establishing records of accounts receivable following such loss or damage, shall be adjusted in accordance with the percentage increase or decrease in twelve-month average of monthly gross revenues which may have occurred in the interim.

6.       The monthly amount of accounts receivable thus established shall be further adjusted in accordance with any demonstrable variance from the average for the particular month in which the loss occurred, due consideration also being given to the normal fluctuations in the amount of accounts receivable within the fiscal month involved.

7.       There shall be deducted from the total amount of accounts receivable, however established, the amount of such accounts evidenced by records not lost or damaged, or otherwise established or collected by

CONFIDENTIAL

FDS 0913 0001330

the Insured, together with an amount to allow for probable bad debts which would normally have been uncorrectable by the insured;

e.  Loss resulting from service interruption (Purchased Services) directly supplying the Insured such as, but not limited to, power, heat, water, gas, electricity, steam, telecommunications, refrigeration, and other services caused by damage or destruction by a peril not otherwise excluded of such property/services of a type not otherwise excluded by this policy, including underground piping and conduit, subject to an eight (8) hour qualifying period prior to coverage;

f.  Architect fees, engineering, inspection, superintendent and all other expenses incidental to the repair or replacement of the property;

g.  Fire Department service charges;

h.  Destruction of property covered at the order of civil authority at the time of loss, due to a peril not otherwise excluded;

i.  Fire extinguishing materials lost, expended, damaged or destroyed;

j.  The cost to defend any suit against the Insured alleging physical loss or damage as insured against to personal property of others while on the Insured's premises to the extent of the Insured's liability therefore, even if such suit is groundless, false or fraudulent; but the Company(ies) may without prejudice make such investigation, negotiation or settlement of any such claim or suit as they deem expedient;

3.  **INTEREST AND PROPERTY EXCLUDED**:

This policy does not insure:

a.  Land;

b.  Air;

c.  Water, except as defined elsewhere in this policy and coverage will apply to water which is normally contained within any type of tank, piping system or process equipment;

d.  Growing crops, standing timber, and animals, except when used for research or for sale;

e.  Watercraft, aircraft, satellites, motor vehicles of the Insured otherwise insured, except this policy will cover the Insured's owned vehicles and liability for

---

CONFIDENTIAL                                                                                          FDS 0913 0001331

motor vehicles of others while on insured premises, or within 1000 feet thereon;

f.  Securities, currency, money;

g.  Property while under ocean marine transit;

h.  underground mines or caverns, or any property contained therein;

i.  docks, piers, wharves when loss or damage is caused by action of water or ice or impact of watercraft;

j.  off-shore property, except building and structures and their contents extending from land or shore, floating docks permanently moored to dock, river bank or shore are not to be considered as off-shore;

k.  nuclear power plants;

l.  railroad or railway rolling stock;

m. railroad roadbeds and railroad tracks;

n.  spacecraft, launch vehicles, launch sites & components;

o.  property sold by the Insured under conditional sale, trust agreement, installment plan or other deferred payment plan after delivery to customers.

4.  **DEBRIS REMOVAL:**

This policy covers the necessary and reasonable expenses actually incurred by the Insured due to physical loss or damage as insured against occurring during the term of this policy to remove from the Insured's premises debris of covered property remaining after any such loss or damage, except that no liability is assumed for the expense of removal of:

a.  any foundation, other than damaged portions which must be removed for repair or rebuilding of any covered building or structure; or

b.  any property or part thereof, the removal of which is required by the enforcement of any law, ordinance, regulation or rule regulating or restricting the construction, installation, repair, replacement, demolition, occupancy, operation or other use of such property; or

c.  Pollutants from land or water, nor for the cost to remove, restore or replace polluted land or water.

CONFIDENTIAL

No liability shall exist under this Debris Removal provision unless such expenses are reported to the Company(ies) within one hundred eighty (180) days of the date of the direct physical damage or loss.

5.    **POLLUTANT CLEAN-UP AND REMOVAL:**

This policy covers the necessary and reasonable expenses actually incurred by the Insured to clean-up and remove Pollutants from land or water confined to the Insured's premises if the discharge, dispersal, seepage, migration, release or escape of the Pollutants is directly caused by physical loss or damage not otherwise excluded which occurs during the term of this policy, except no liability is assumed for the expense to cleanup and remove:

a.   Pollutants from land or water at any location covered under the provisions of the Automatic Acquisition clause; or

b.   Pollutants from land or water at any Miscellaneous Unscheduled Location.

No liability shall exist under this Pollutant Clean-up and Removal provision unless such expenses are reported to the Company(ies) within one hundred eighty (180) days of the date of the direct physical damage or loss.

6.    **DEMOLITION:**

In the event of direct physical loss or damage insured by this policy that causes the enforcement of any law or ordinance in force at the time of damage regulating the construction, repair, or use of property insured, this policy covers:

a.   The cost of demolishing the undamaged property including the cost of clearing the site; and

b.   The proportion that the value of the undamaged part of the property insured bore to the value of the, entire property prior to loss.

7.    **INCREASED COST OF CONSTRUCTION:**

This policy covers the increased cost of construction, reconstruction, erection or installation occasioned by any civil authority's enforcement of any ordinance or law in force at the time of damage regulating the reconstruction, repair or demolition of any property insured hereunder, when such property.

suffers damage by any peril insured by this policy. However, the Company(ies) shall not be liable for any increased cost of construction, reconstruction, erection or installation unless the damaged property is actually rebuilt or replaced.

CONFIDENTIAL

FDS 0913 0001333

This Elaboration of Coverage does not cover any increase of loss associated with the enforcement of any law or ordinance which requires the Insured or others to test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize or in anyway respond to or assess the effects of pollutants.

8. **EXPEDITING EXPENSES:**

This policy covers the reasonable extra cost of temporary repair and of expediting the permanent repair of damaged property insured hereunder, including overtime and express freight or other rapid means of transportation, subject to limit of liability herein.

9. **VALUATION:**

In the event of loss or damage to the property insured, the basis of adjustment shall be as follows:

    a.    Raw materials and supplies not manufactured by the Insured, the Replacement cost new;

    b.    Stock in process, the value of raw materials and labor expended, plus the proportion of overhead charges;

    c.    Finished stock manufactured by the Insured, the Insured's selling price at the time and place of loss, less all discounts and charges to which such merchandise would have been subject had no loss occurred;

    d.    Merchandise, the last owned retail price on the Stock Ledger;

    e.    Buildings, machinery and equipment, and furniture and fixtures; the amount actually expended by or on behalf of the Insured to repair, rebuild or replace beginning within two (2) years from the date of loss or damage, at the same or other sites, such property which has been damaged, all subject to the following conditions:

        1.    If the total property damage loss, excluding stock and merchandise, is greater than 50 percent of the values, excluding stock and merchandise, reported for premium purposes, then the Insured may elect Prototype Replacement Cost.

          For the purposes of this provision only, "Prototype Replacement Cost' shall mean the cost to replace the property with similar property intended to perform the same function as described by Federated Department Stores' Prototype facility.

CONFIDENTIAL    FDS 0913 0001334

2.      Liability under the terms of this provision shall be the cost to repair, rebuild or replace, the lost or damaged property with other property used for the same purposes, as described by Federated Department Stores' Prototype facility.

3.      If the Insured does not begin to repair, rebuild or replace the lost, stolen, or damaged property within two (2) years of the loss or damage, recovery shall be the Actual Cash Value at the time and place of loss.

4.      The Insured may elect not to replace the Real and/or Personal Property loss, damaged, or destroyed and obtain loss settlement on a replacement cost basis if the proceeds of such loss settlement are expended in other capital expenditures related to the Insured" operations.

f.      Valuable papers, books of account, card index systems and other records including tape, disc, drum celanmachine sensitive media and other magnetic recording or storage media for electronic data processing, the reproduction cost, if actually reproduced, including the costs incurred to gather or assemble information or data for reproduction from sources other than duplicates or originals of the previous generation of media for, or programming records pertaining to, electronic and electromechanical data processing or electronically controlled equipment, including the data thereon; otherwise at value blank plus the cost the cost of transcription, if any;

g.      Fine Arts, as per schedule on file with Company(ies); if not scheduled, at original cost to the Insured;

h.      Damaged property which is functionally obsolete, the replacement cost of new property that performs to at least the minimum standards of the loss or damaged property;

i.      Property of employees, customers, and others, at the replacement cost of repairing, rebuilding, or replacing with new materials of like kind and quality, or, at the option of the Insured, the amount of the Insured's liability imposed by law or assumed by written contract (including penalties).

j.      All other property, at the replacement cost of repairing, rebuilding, or replacing with new materials of like kind and quality.

## 10.   BRANDS AND LABELS:

CONFIDENTIAL

FDS 0913 0001335

If branded or labeled Merchandise or Finished Stock covered by this policy is damaged and the Insurer elects to take all or any part of such Merchandise or Finished Stock at the value established by the provisions of this policy, the Insured may stamp "salvage" on the Merchandise or Finished Stock or its containers or may remove or obliterate the brands or labels, if such stamp, removal or obliteration will not physically damage or otherwise reduce the value of the Merchandise or Finished Stock, but the Insured shall re-label the Merchandise or Finished Stock or containers in compliance with the requirements of law.

11.   **CONTROL OF DAMAGED MERCHANDISE:**

It is understood and agreed that the Insured shall have full right to the possession of all goods involved in any loss under this policy and shall retain control of all damaged goods. The Insured exercising a reasonable discretion shall be the sole judge as to whether the goods involved in any loss under the policy are fit for use and no goods so deemed by the Insured to be unfit for use shall be sold or otherwise disposed of except by the Insured or with the Insured's consent, but the Insured shall allow the Company(ies) any salvage which could be or could have been obtained on any sale or other disposition of such goods. It is further understood and agreed that the Insured shall retain the right to appoint the Salvor.

12.   **RECOVERIES:**

Any recovery as the result of subrogation proceedings shall accrue to the Company(ies) and the Insured jointly in the proportion of the amount of financial loss borne by each. Expenses necessary to the recovery of any such amounts shall be apportioned between the Company(ies) and the Insured in the ratio of their respective recoveries as finally settled.

If there should be no recovery, the expense of proceedings shall be borne proportionately by the interests instituting the proceedings.

13.   **PAIR & SET:**

In the event any merchandise insured hereunder is lost, damaged or destroyed, which affects the value of the remaining merchandise, the Company(ies) agree to pay the insured the value of the entire pair and set and the Insured agrees to surrender the damaged and sound portions to the Company(ies).

14.   **DEFINITIONS:**

a.      **Fine Arts**

The term "fine arts" shall include but not be limited to painting, etchings, pictures, tapestries, art glass windows and other bona fide works of art (such as

---

CONFIDENTIAL                                                          FDS 0913 0001336

valuable rugs, statutory, marbles, bronzes antique furniture, rare books, antique silver, manuscripts, porcelain, rare glass and bric-a-brac) of rarity, historical value, monetary value, or artistic merit.

b.   **Electronic/Data Processing Equipment**

The term "electronic/data processing equipment" shall include but not be limited to a network of machine components capable of accepting and processing information, including hardware and air-conditioning equipment used exclusively for this network.

c.   **Valuable Papers and Records**

The term "valuable papers and records" shall mean written, printed or otherwise inscribed documents and records including but not limited to books, maps, films, drawings, deeds and manuscripts.

---

CONFIDENTIAL                                                                            FDS 0913 0001337

## PART 2

## TIME ELEMENT

1. **ELABORATION OF COVERAGE:**

In the event of direct physical loss and/or damage to property covered by this policy by a peril insured, occurring during the policy period, this policy provides time element coverages as further outlined herein, subject to the following terms and conditions.

2. **EXPERIENCE OF THE BUSINESS:**

a. In determining the amount of loss sustained hereunder, due consideration shall be given to the experience of the business before the date of damage or destruction and to the probable experience thereafter had no physical loss and/or damage occurred.

b. With respect to alterations, additions, and property while in the course of construction, erection, installation, renovation, or assembly, due consideration shall be given to the available experience of the business after completion of the construction, erection, installation, renovation, or assembly.

3. **SPECIAL CONDITIONS:**

a. **Variations in Business**

In adjusting the amount of indemnity, account shall be taken of any variations in the business of the Insured and an equitable allowance made for all extraordinary and other circumstances of the business.

b. **Interruption by Civil Authority**

This policy is extended to cover the loss sustained by the Insured during the period of time, up to four (4) consecutive weeks when, as a direct result of damage by a peril not otherwise excluded to property of a type not excluded, occurring within 5 miles of an insured location, access to the Insured's premises is prohibited by order of governmental authority.

c. **Ingress/Egress**

This policy is extended to cover the loss sustained by the Insured during the period of time, up to four (4) consecutive weeks, when

CONFIDENTIAL                                                                                          FDS 0913 0001338

as a direct result of damage by a peril not otherwise excluded, to property of a type not excluded, occurring within 5 miles of an insured location, ingress to or egress from the Insured's premise is thereby prevented.

d.    **Period of Indemnity**

The period of indemnity shall begin with the Occurrence of the damage and shall continue for only such length of time as would be required with the exercise of due diligence and dispatch, to restore the Insured's business to the condition that would have existed had no loss occurred without limitation as to the expiration date of this policy, but in no event for more than ninety (90) consecutive calendar days after the date on which repair, replacement or rebuilding of the damaged property has been completed and store opening occurs.

e.    **Increased Time to Rebuild**

The Company(ies) shall also be liable for loss due to the additional period of time required for repair, reconstruction or replacement of building(s) or structure(s) and such repair, reconstruction or replacement is necessitated by the enforcement of any law or ordinance regulating same.

f.    **Delayed Opening**

As respects loss resulting from loss or damage from a peril not otherwise excluded, to property in the course of construction, erection, installation, assembly, or renovation, which delays commencement of operations of the Insured, such loss shall be calculated by applying the length of time, determined as otherwise provided herein, to the level of operations or production that would have been reasonably achieved after construction and start-up would have been completed had no damage occurred.

g.    **Soft Costs**

In the event of direct physical loss or damage from a peril not otherwise excluded to property in the incidental course of construction, this policy provides coverage for those expenses related to such project over and above those costs which would have been incurred, including but not limited to interest payments on financing under a loan agreement and real estate taxes accruing during the period of delay.

CONFIDENTIAL                                                                      FDS 0913 0001339

h.  **Impounded Water**

The Company(ies) shall also be liable for loss from a peril not otherwise excluded, for up to thirty (30) consecutive days due to the release and subsequent lack of water supply stored behind dams and reservoirs, and equipment connected therewith, when such water supply is used as a raw material, for power, for manufacturing purposes or for fire protection systems, and when such release is caused by physical damage to such dams and reservoirs by a peril not otherwise excluded.

4.  **RESUMPTION OF OPERATIONS:**

It is a condition of this policy that if the Insured could reduce the loss:

a.  By complete or partial resumption of operation of business, whether at the damaged premises or elsewhere; or

b.  By making use of any stock (raw, in process or finished) or merchandise at the location(s) operated by the Insured or elsewhere;

As respects "Contingent Time Element," it is a condition that if the Insured could reduce the loss:

c.  By making use of any other available source of materials/services in lieu of any contributing property(ies); or

d.  By making use of any other available outlet for product(s)/services in lieu of any recipient property(ies);

Such reduction shall be taken into account in arriving at the amount of loss.

5.  **FINISHED STOCK:**

This policy does not insure against Gross Earnings loss resulting from damage to Merchandise or Finished Stock nor for the time required to reproduce said Merchandise or Finished Stock.

6.  **IDLE PERIODS:**

This policy does not insure against Time Element loss for any period during which business would not or could not have been conducted for any reason other tan physical damage of the type insured against.

---

Federated Master Property Policy 2005-2006                    32

CONFIDENTIAL                                        FDS 0913 0001340

7.     **LEASES, LICENSES, CONTRACTS, ORDERS:**

This policy does not insure against any increase of loss resulting from the suspension, lapse or cancellation of any lease, license, contract or order unless such suspension, lapse or cancellation results directly from the interruption of business insured hereunder, and then there shall be liability for only such loss as affects the Insured's earnings during, and limited to, the period of indemnity covered under this policy.

8.     **MALL PROPERTY TIME ELEMENT:**

This policy is extended to cover the actual loss sustained by the Insured directly resulting from the reduction in sales which are solely the result of direct physical damage of the type insured against to real and personal property, not excluded by this policy, being the other mall property located on the premises of the Insured.

9.     **PURCHASED SERVICES:**

This policy covers loss as insured hereunder resulting from the interruption of purchased services in anyway used by the Insured, as a result of direct physical loss or damage by a peril not otherwise excluded hereunder to the properties or facilities of direct suppliers, including underground piping and conduit, of such purchased services. Such purchased services shall include, but not be limited to, suppliers of power, heat, water, gas, electricity, steam, telecommunications, and refrigeration.

This policy also covers loss as insured hereunder arising from the inability of the Insured to directly discharge its outgoing effluents to a waste treatment plant or public sewage mains as a result of direct physical loss or damage by a peril not otherwise excluded hereunder.

Coverage under this clause applies so long as the interruption of services is in excess of eight (8) hours.

10.    **CONTINGENT TIME ELEMENT:**

This policy covers loss as insured hereunder sustained by the Insured resulting from direct physical loss or damage to first tier contributing or recipient property(ies) from a peril not otherwise excluded hereunder.

11.    **ROYALTIES:**

This policy covers loss sustained by the Insured under royalty, licensing fees and/or commission agreements between the Insured and another party resulting directly from physical loss or damage to property of a type not otherwise excluded, by a peril not otherwise excluded hereunder.

CONFIDENTIAL                                                  FDS 0913 0001341

12.   **<u>IDENTITY OF INTERESTS:</u>**

If the named Insured is comprised of more than one legal entity, liability shall not exceed the amount of loss had all interests comprised a single legal entity

CONFIDENTIAL

FDS 0913 0001342

## PART 2A

### GROSS EARNINGS

1.  **COVERAGE:**

    Subject to all its provisions, this policy covers loss resulting directly from necessary interruption of business caused by physical loss or damage from a peril not otherwise excluded hereunder to real or personal property of the type covered at the Insured's premises, except Finished Stock and Merchandise as follows:

    Recovery in the event of loss shall be the ACTUAL LOSS SUSTAINED by the Insured resulting directly from such interruption of business, but not exceeding the reduction in Gross Earnings less charges and expenses which do not necessarily continue during the interruption of business, for only such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair or replace such described property as has been damaged, commencing with the date of such damage and not limited by the date of expiration of this policy. This period of time does not include any additional time due to the Insured's inability to resume operations regardless of the reason, except as provided elsewhere in this policy.

    Due consideration shall be given to the continuation of normal charges and expenses, including payroll expense, to the extent necessary to resume operations of the Insured with the same quality of service which existed immediately preceding the loss.

2.  **DEFINITIONS:**

    **GROSS EARNINGS** – For the purposes of this insurance, "Gross Earnings" is defined as the sum of:

    a.  Total net sales value of production (manufacturing operations);

    b.  Total net sales of merchandise (mercantile operations); and

    c.  Other earnings derived from operations of the business; less the cost of,

    d.  Raw stock from which such production is derived;

    e.  Supplies consisting of materials consumed directly in the conversion of such raw stock into finished stock or in supplying the service(s) sold by the Insured;

    f.  Merchandise sold, including packaging materials therefore; and

    g.  Service(s) purchased from outsiders (not employees of the Insured) for

---

Federated Master Property Policy 2005-2006          35

FDS 0913 0001343

resale which do not continue under contract.

No other costs shall be deducted in determining Gross Earnings.

3.      **EXPENSE TO REDUCE LOSS:**

This policy covers such expenses as are necessarily incurred for the purpose of reducing any loss under this Part 2A and such expenses, in excess of normal, as are necessarily incurred in replacing any Finished Stock or Merchandise used by the Insured to reduce loss under this Part 2A, but in no event shall the aggregate of such expenses exceed the amount by which the loss under this Part 2A is thereby reduced.

CONFIDENTIAL                                                      FDS 0913 0001344

## PART 2B

### EXTRA EXPENSE

1.   **COVERAGE:**

Subject to all its provisions, this policy covers the necessary extra expense, as hereinafter defined, incurred by the Insured in order to continue as nearly as practicable the normal operation of the Insured's business following physical loss or damage of the type insured against to real or personal property of the type covered at the Insured's premises.

The term "extra expense" is defined as the excess (if any) of the total cost incurred during the period of indemnity of the damaged property chargeable to the operation of the Insured's business, over and above the total cost that would normally have been incurred to conduct the business during the same period had no damage occurred.

Any salvage value of the property obtained for temporary use during the period of restoration, which remains after the resumption of normal operations shall be taken into consideration in the adjustment of any loss.

CONFIDENTIAL

FDS 0913 0001345

## PART 2C

### RENTAL INCOME

1.  **COVERAGE:**

    Subject to all its provisions, this policy covers the rental income loss sustained by the Insured resulting directly from the necessary untenantability of insured property of the type covered caused by physical loss or damage by a peril not otherwise excluded to real or personal property of the type covered at the Insured's premises, whether rented or not, but not exceeding the reduction in rental income less charges and expenses which do not necessarily continue during the period of untenantability.

    **For the purposes of this insurance, "rental income" is defined as the sum of:**

    a.  **The total anticipated gross rental income from tenant occupancy of the property as furnished and equipped by the Insured; and**

    b.  **The amount of all charges which are the legal obligation of the tenant(s) and which would otherwise be obligations of the Insured; and**

    c.  **The fair rental value of any portion of said premises which is occupied by the Insured.**

CONFIDENTIAL                                                              FDS 0913 0001346

# PART 2D

## LEASEHOLD INTEREST

1. ### COVERAGE:

Subject to all its provisions, this policy covers leasehold interest and the interest of the Insured as lessee as hereinafter defined, at all locations leased to the Insured when property is rendered wholly or partially untenantable as a result of physical loss or damage by a peril not otherwise excluded to real or personal property of the type covered at the Insured's premises and the lease is canceled by the lessor in accordance with the conditions of such lease or by statutory requirements of the state in which the property is located.

The term "leasehold interest" as used herein is defined as the pro rata proportion from the date of loss to expiration date of the lease of the Insured's interest in.

   a.  The amount of bonus paid by the Insured for the acquisition of the described lease;

   b.  The advance rental paid by the Insured and not recoverable under the terms of the lease for the unexpired term of the lease;

   c.  The excess rent payable plus cash bonuses or advance rent paid for the same or similar replacing premises (including any maintenance or operating charges) during the unexpired term of the described lease;

   d.  Continuing rental payments required by lease when property cannot be occupied.

The term "interest of the Insured as lessee" as used herein is defined as the pro rata proportion from the date of loss to expiration of the lease of the Insured's interest in:

   e.  The excess of the rental value of similar premises over the actual rental payable by the Insured (including any maintenance or operations charges);

   f.  The rental income which would have been earned by the Insured from sublease agreements, to the extent not covered under any other Part of this policy, over and above the rental expense specified in the lease between the Insured and the lessor.

CONFIDENTIAL                                                                FDS 0913 0001347

The interest of the Insured as lessee shall be paid for the first three months succeeding the date of loss and the net lease interest shall be paid for the remaining months of the unexpired lease. "Net lease interest" as used herein is defined as that sum, which placed at 10 (ten) percent interest rate compounded annually, will be the equivalent of the interest of the Insured as lessee.

Attached to and forming part of Policy Number 496-1-PRO 001 issued by Federated Department Stores Insurance Company, Inc.

Authorized Signature

Date  6/27/05

Federated Department Stores, Inc.

CONFIDENTIAL                                                                                                    FDS 0913 0001348

Policy Number:   496-1-PRO 001                     Effective Date:      02/01/05
Insured:         Federated Department Stores, Inc.  Endorsement No.:   1

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## ELECTRONIC DATA ENDORSEMENT

1.  **Electronic Data Exclusion**

    Notwithstanding any provision to the contrary within the Policy or any endorsement
    thereto, it is understood and agreed as follows:-

    a)   This Policy does not insure loss, damage, destruction, distortion, erasure, corruption
         or alteration of ELECTRONIC DATA from any cause whatsoever (including but not
         limited to COMPUTER VIRUS) or loss of use, reduction in functionality, cost,
         expense of whatsoever nature resulting therefrom, regardless of any other cause or
         event contributing concurrently or in any other sequence to the loss.

         ELECTRONIC DATA means facts, concepts and information converted to a form
         useable for communications, interpretation or processing by electronic and
         electromechanical data processing or electronically controlled equipment and
         includes programmes, software and other coded instructions for the processing and
         manipulation of data or the direction and manipulation of such equipment.

         COMPUTER VIRUS means a set of corrupting, harmful or otherwise unauthorized
         instructions or code including a set of maliciously introduced unauthorized
         instructions or code, programmatic or otherwise, that propagate themselves through a
         computer system or network of whatsoever nature. COMPUTER VIRUS includes but
         is not limited to 'Trojan Horses', 'worms' and 'time or logic bombs'.

    b)   However, in the event that a peril listed below results from any of the matters
         described in paragraph a) above, this Policy, subject to all its terms, conditions and
         exclusions, will cover physical damage occurring during the Policy period to property
         insured by this Policy directly caused by such listed peril.

         Listed Perils
         Fire
         Explosion

2.  **Electronic Data Processing Media Valuation**

    Notwithstanding any provision to the contrary within the Policy or any endorsement
    thereto, it is understood and agreed as follows:-

    Should electronic data processing media insured by this Policy suffer physical loss or

---

CONFIDENTIAL                                                         FDS 0913 0001349

damage insured by this Policy, then the basis of valuation shall be the cost to repair, replace or restore such media to the condition that existed immediately prior to such loss or damage, including the cost of reproducing any ELECTRONIC DATA contained thereon, providing such media is repaired, replaced or restored. Such cost of reproduction shall include all reasonable and necessary amounts, not to exceed $25,000,000 any one loss, incurred by the Assured in recreating, gathering and assembling such ELECTRONIC DATA. If the media is not repaired, replaced or restored the basis of valuation shall be the cost of the blank media. However this Policy does not insure any amount pertaining to the value of such ELECTRONIC DATA to the Assured or any other party, even if such ELECTRONIC DATA cannot be recreated, gathered or assembled.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

Attached to and forming part of Policy Number 496-1-PRO 001 issued by Federated Department Stores Insurance Company, Inc.

**The policy changes provided by this endorsement shall supersede and annul any conflicting provisions of the policy. All other matters not affected by this endorsement remain the same and shall be governed by the terms and conditions of the Company's policy to which this endorsement is attached.**

(Authorized Representative)

Federated Master Property Policy 2005-2006                    42

CONFIDENTIAL                                                  FDS 0913 0001350

| Policy Number: | 496-1-PRO 001 | Effective Date: | 02/01/05 |
|---|---|---|---|
| Insured: | Federated Department Stores, Inc. | Endorsement No.: | 2 |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**WEH ASBESTOS ENDORSEMENT**

A.   This Policy only insures asbestos physically incorporated in an insured building or structure, and then only that part of the asbestos which has been physically damaged during the policy period by one of these Listed Perils:

Fire; Smoke; Explosion; Lightning; Windstorm; Hail; Direct impact of vehicle, aircraft or vessel; Riot or civil commotion; Vandalism or malicious mischief; or accidental discharge of fire protective equipment.

This coverage is subject to all limitations in the policy to which this endorsement is attached and, in addition, to each of the following specific limitations:

1.   The said building or structure must be insured under this policy for damage by that Listed Peril.

2.   The Listed Peril must be the immediate, sole cause of the damage to the asbestos.

3.   The Assured must report to Underwriters the existence and cost of the damage as soon as practicable after the Listed Peril first damaged the asbestos.  However this Policy does not insure any such damage first reported to Underwriters more than 12 (twelve) months after the expiration, or termination, of the policy period.

4.   Insurance under this policy in respect of asbestos shall not include any sum relating to:

(i)   faults in the design, manufacture or installation of the asbestos,

(ii)   asbestos not physically damaged by the Listed Peril including any governmental or regulatory authority direction or request of whatsoever nature relating to undamaged asbestos,

B.   Except as set forth in the foregoing Section A, this policy does not insure asbestos or any sum relating thereto.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

CONFIDENTIAL                                                                 FDS 0913 0001351

Attached to and forming part of Policy Number 496-1-PRO 001 issued by Federated Department Stores Insurance Company, Inc.

**The policy changes provided by this endorsement shall supersede and annul any conflicting provisions of the policy. All other matters not affected by this endorsement remain the same and shall be governed by the terms and conditions of the Company's policy to which this endorsement is attached.**

Federated Master Property Policy 2005-2006                44

CONFIDENTIAL

FDS 0913 0001352

(Authorized Representative)

| | | | |
|---|---|---|---|
| Policy Number: | 496-1-PRO 001 | Effective Date: | 02/01/05 |
| Insured: | Federated Department Stores, Inc. | Endorsement No.: | 3 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ELECTRONIC DATE RECOGNITION CLAUSE

Notwithstanding any provision of this Policy which may appear to the contrary, this Policy does not insure any loss, damage, cost, claim or expense, whether preventative, remedial or otherwise, directly or indirectly arising out of or relating to:

a.     the recognition, interpretation, calculation, comparison, differentiation, sequencing or processing of data involving one or more dates or times, including the year 2000, by any computer system, hardware, program or software, or any microchip, integrated circuit or similar device in computer equipment or non-computer equipment whether the property of the Insured or not; or,

b.     any change, alteration, correction or modification involving one or more dates or times, including Year 2000, to any such computer system, hardware, program or software, or any microchip, integrated circuit or similar device in computer equipment or non-computer equipment, whether the property of the Insured or not.

Except as provided in the next paragraph, this Electronic Date Recognition Clause shall apply regardless of any other cause or event that contributes concurrently or in any sequence to the loss, damage, cost, claim or expense.

If direct physical loss or damage not otherwise excluded by this Policy results, then subject to all its terms and conditions, this Policy shall be liable only for such resulting loss or damage. Such resulting loss or damage shall not include any cost, claim or expense, whether preventative, remedial or otherwise, arising out of or relating to any change, alteration, correction or modification relating to the ability of any damaged computer system, hardware, program or software, or any microchip, integrated circuit or similar device in computer equipment or non-computer equipment to recognize, interpret, calculate, compare, differentiate, sequence or process any data involving one or more dates or times, including the Year 2000.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

Attached to and forming part of Policy Number 496-1-PRO 001 issued by Federated Department Stores Insurance Company, Inc.

---

Federated Master Property Policy 2005-2006                    45

CONFIDENTIAL                                                    FDS 0913 0001353

The policy changes provided by this endorsement shall supersede and annul any conflicting provisions of the policy.  All other matters not affected by this endorsement remain the same and shall be governed by the terms and conditions of the Company's policy to which this endorsement is attached.

(Authorized Representative)

CONFIDENTIAL

FDS 0913 0001354

## POLICYHOLDER DISCLOSURE – TERRORISM RISK INSURANCE ACT OF 2002
### NOTICE OF TERRORISM INSURANCE COVERAGE
### NOTICE OF EXPIRATION EFFECTIVE 12/31/05

Under the Terrorism Risk Insurance Act of 2002 (hereinafter known as Act or the Act), effective November 26, 2002, you have the right to purchase insurance coverage for losses arising out of acts of terrorism, as defined in Section 102(1) of the Act. The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and the Attorney General of the United States to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property; or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

You should know that coverage provided by this policy for losses caused by certified acts of terrorism is partially reimbursed by the United States under a formula established by Federal law. Under this formula, the United States pays 90% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage.

The Act may limit our liability to you under this policy. If annual aggregate insured Act losses of all insurers exceed $100,000,000,000 during the applicable period provided in the Act, and if we have met our insurer deductible, the amount we will pay for insured Act losses under this policy will be limited by the Act, as determined by the Secretary of the Treasury.

*Note: The Act expires on 12/31/05 and its renewal is uncertain at this time. If the Act is not renewed, this policy will no longer provide coverage for terrorism losses on the same basis as prior to 12/31/05. All provisions of the Act, including partial reimbursement by the United States, will cease and the terrorism exclusion (NMA 2920) will be endorsed to this policy. If the Act is renewed, to the extent that any provisions are mandatory for insurers or insureds, such provisions shall automatically apply to this policy. "Renewal" and "renewed" as used in this paragraph mean any renewal, extension or replacement of the Act.*

Attached to and forming part of policy number        496-1-PRO 001              issued to
<u>Federated Department Stores, Inc.</u>        by <u>Federated Department Stores Insurance Company, Inc.</u>

CONFIDENTIAL                                                           FDS 0913 0001355