UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 06-22147-CIV-KING/GARBER

FEDERATED DEPARTMENT STORES, INC.,

*Plaintiff,*

vs.

FEDERATED DEPARTMENT STORES INSURANCE CO., INC.,

*Defendant.*
____________________________________/

**DEFENDANT'S OPPOSITON TO PLAINTIFF'S**
**MOTION IN LIMINE TO EXCLUDE J.S. HELD VIDEOS**

Dated: February 25, 2008

Stephen N. Zack, Esq.
szack@bsfllp.com
Jennifer G. Altman, Esq.
jaltman@bsfllp.com
Boies, Schiller & Flexner LLP
100 S.E. Second Street
2800 Bank of America Tower
Miami, Florida 33131
Tel. 305.539.8400
Fax 305.539.1307

Carlos M. Sires, Esq.
csires@bsfllp.com
Carl E. Goldfarb, Esq.
cgoldfarb@bsfllp.com
Boies, Schiller & Flexner LLP
401 East Olas Boulevard, Suite 1200
Ft. Lauderdale, Florida 33301
Tel. 954.356.0011
Fax 954.356.0022

*Attorneys for Defendant Federated Department Stores Insurance Co., Inc.*

## INTRODUCTION

This lawsuit involves the extent of the property damage caused by Hurricane Wilma at three South Florida Macy's stores owned by Federated Department Stores, Inc. ("Federated Stores"): The Falls Shopping Center, the Galleria Mall, and the Fashion Mall in Plantation. At the core of the claim is the assertion by Federated Stores that the "Prototype Replacement Cost" provision of the insurance policy applies, and allows Federated Stores to gut and rebuild any store with respect to which "the total property damage loss, excluding stock and merchandise, is greater than 50 percent of the [dollar] values, excluding stock and merchandise, reported for premium purposes …." (Ex. 1, Master Property Insurance Policy, at 26, Section 9(e).)

Naturally, Federated Stores vigorously opposes anything that tends to show that the stores did *not* suffer such damage. The J.S. Held ("Held") videotapes, which would enable jurors to see evidence of the damages at the stores with their own eyes, fall into that category. The Held videos were created in March 2006, and Federated Stores seeks to exclude them on that basis, contending, without *any* support from the record, that the videos were taken "after substantial repairs had been made" and are not fair representations of the stores "because they depict the properties in substantially improved conditions." (Plaintiff's Motion in Limine to Exclude J.S. Held Videos ("Plaintiff's Motion in Limine") at 1.)[1] While there was some emergency stabilization work done, the stores, of course, were not repaired because Federated Stores chose to demolish and rebuild two of the stores, and to permanently shutter the third store. (Ex. 2, 5/4/06 letter from Pangburn to Slane at FDS 0507 0010812-14; Ex. 3, Schwirtz at 313:12-

[1] The plaintiff's argument is grounded on the faulty assumption that the true extent of damage can *only* be detected immediately after a storm. As anyone who has ever lived through a hurricane knows, however, the damage usually looks *worse* immediately after the storm, before clean up has begun and the superficial mess has been cleared away.

21.) Federated Stores cites to no evidence of repairs, let alone of "substantial repairs," and there is no such evidence to which it could cite.

Federated Stores claims the stores suffered significant water damage but ignores the fact that water damage leaves traces – cracking, buckling, warping – that are visible long after the water dries. (Ex. 4, Jaeger at 147:11-150:9.) Federated Stores has presented no evidence that videotapes do not accurately show the general damage in the stores after the storm, and it turns a blind eye to contrary evidence. Tellingly, Federated Stores does not inform the Court that its own consultants from the URS Corporation, based on their continuing inspections of the stores, were still revising their "moisture maps" —plaintiff's chief source of proof as to the extent of damage—as late as *February 2006*, (Ex. 5, Lamar at 403:5-403:24), in a clear indication of the relevance of the stores' appearance as of that date. URS performed their "last damage assessment" of the stores "[o]n or about February 7th or 8th." (Ex. 6, URS 30(b)(6) at 246:18-20). That was nearly three and one half months after Hurricane Wilma, and belies any claim that the videos do not accurately depict the hurricane damage simply because they were not taken immediately after the hurricane. (*See also* Ex. 7, Huggins, 7/31/07, at 285:14-287:17) (testifying that URS in its subsequent inspections found additional damages until about early 2006 when it determined "we're not going to see any more damage").)

As explained below, the Held company made the videotape of the stores because two of the three stores were about to be demolished. Having demolished the stores, Federated Stores is now trying to keep the jury from seeing videotapes of what the stores looked like before they were demolished, without providing any evidence that the videotapes do not show how the stores looked after Hurricane Wilma.

The tapes and the narrative are admissible as a business record and accordingly Federated Stores hearsay argument is without merit. The narrative on the videos describes how the appearance of the stores has changed, if at all, from the condition the stores were in previously.[2] Thus, far from being misleading, the narrative puts the tapes in context. Federated Insurance does not claim that the videotapes were made immediately after Hurricane Wilma, and the jury can decide what weight to place on the tapes, in light of the narrative and the testimony of witnesses, including Nathan Johnson who made the videotapes and who narrates them, about when the tapes were made and what the stores looked like. Federated Stores claims that the tapes have at most "minimal" probative value, which is "substantially outweighed" by their prejudicial effect. (Plaintiff's Motion in Limine at 4.) That assertion is based on the unsupported and inaccurate contention that "substantial repairs had taken place" (Plaintiff's Motion in Limine at 1) before the videotapes were made. In any event, Federated Stores does not argue that the tapes do not show at least some parts of the stores as they were immediately after Hurricane Wilma. Federated Stores' assertion that the videotapes would have minimal probative value cannot stand scrutiny or review of the tapes themselves. Federated Stores is simply seeking to deprive the jury of access to relevant evidence.

In any event, Federated Stores' motion is premature. The Court should determine the admissibility of the Held videotapes at trial when the tapes can be authenticated and when it can hear testimony from Johnson and from other witnesses regarding why and how the tapes were made, the conditions of the stores after Hurricane Wilma, and whether the videotapes accurately

[2] Federated Stores acknowledges that videos are relevant unless it can show they were taken under "materially improved conditions" or "materially different conditions." (Plaintiff's Motion in Limine at 3.) While the narrative by Johnson states that there have been some changes in the stores since his prior visits, he does not state in his narrative, which Federated Stores dismisses as hearsay yet attempts to invoke in support of its argument, that conditions are materially different let alone materially improved.

reflect those conditions.[3] *See Roberts v. Charter Nat'l Life Ins. Co.*, 105 F.R.D. 492, 493 (S.D. Fla. 1985) (King, J.) ("Consideration of evidentiary rulings on an item by item, piecemeal, basis is counter-productive to the effective administration of justice in a busy trial court. When these rulings are made at the time the exhibit is offered in evidence, the trial judge has the benefit of full development of all relevant facts constituting the introductory predicate for admission of the item or statement. Motions in limine rarely provide this factual background."). Similarly, deferring this issue to trial would allow the Court to develop an evidentiary record to address Federated Stores' purely speculative (and erroneous) assertion (Plaintiff's Motion in Limine at 7) that the videotapes appear to "have been significantly altered since filming occurred."

Federated Stores treats the videotapes as an indistinguishable and monolithic whole, and seeks wholesale exclusion of the tapes even though it does not and cannot argue that the videotapes do not show at least some parts of the stores as they were immediately after the hurricane. Rather than adopt Federated Stores blanket approach, the Court might choose to determine the admissibility of the videotapes on a segment by segment basis.[4]

Accordingly, Federated Stores' in limine motion should be denied on both substantive and procedural grounds.

## ARGUMENT

### I. BACKGROUND

The videotapes were made by Nathan Johnson, of the Held company, on March 21 and 22 of 2006. (*See* Ex. 8, Jaeger 0039-0044 at 0041.) Johnson was one of the two Held representatives who conducted extensive inspections of the stores. (Ex. 4, Jaeger at 129:5-

---

[3] Defendant reserves the right to object to the admissibility of many of plaintiff's photographs on this basis at trial.

[4] For instance, Federated stores claims (Plaintiff's Motion in Limine at 6) that it is not always clear from the tapes which part of which stores is being filmed. At most, that is an argument for excluding a portion of the videotapes.

131:19; Ex. 8, Jaeger 0029 to 0044.) At trial, Federated Insurance proffers that it will be able to establish: (1) Erik Jaeger, a vice president at Held and the supervisor on the project, decided to have a videotape of the stores made when he heard that the stores might be demolished; (2) it is Held's standard practice in cases involving losses of several million dollars or more to have a videotape made (or sometimes to take additional photographs) when the structure at issue in a claim is going to be altered, whether through construction or demolition, before the claim has been resolved; (3) Johnson took the videotapes during the course of his duties, and transmitted those videotapes to Held's New York offices where they were retained by the Held company in the normal course of its business until copies of the videotapes were produced in this action.

The videotapes show three South Florida stores. Johnson walked through the stores, identified where he was in the stores, videotaped any identifying signs, videotaped the inside of the stores, and described what he observed, including changes from his prior observations of the stores. He also videotaped the outside of the stores and the roofs.

## II. THE VIDEO IS RELEVANT AND NOT UNDULY PREJUDICIAL.

It is a rare event in pre-trial practice when the best reasons to deny a motion are set forth in the very first case cited *in the movant's brief*. But that is the case here.

Federated Stores cites *Fischer v. ARC Housing, LLC*, No. 04-61389-CIV, 2005 WL 5956614 (S.D. Fla.), asserting that the Fischer court "exclud[ed] photographs not depicting property as existing at time of accident" (Plaintiff's Motion in Limine at 3) — a flat misstatement of the court's holding. *Fischer* involved an accident in a parking lot, and the defendant moved in limine to exclude photographs of the lot taken some four or five months after the accident. As the court observed,

> [i]t is widely recognized that photographs, if properly authenticated, are admissible even if taken some time after the

> event at issue. The primary legal issue is whether or not the pictures accurately reflect the scene as it appeared on the date of the accident. The amount of time that has passed since the incident is not a factor. *Inaccuracies or unreliability [of the photographs] can be exposed by cross-examination.*

*Fischer*, 2005 WL 5956614, at *2 (emphasis added) (internal quotation marks and citations omitted). The defendant in *Fischer* argued that the condition of the parking lot had changed. The plaintiff responded by demonstrating that there were witnesses available to testify that the pictures accurately reflected the condition of the parking lot on the day of the incident. Accordingly, the *Fischer* court denied the motion:

> Defendant has not provided sufficient basis to preclude the photographs. The mere passage of time between the incident and the taking of the photographs is not enough to preclude them from evidence. Provided the photographs are properly authenticated *at trial*, they will be admitted.

*Id.* at *1 (emphasis added)[5] (citing *Jenkins v. Associated Transport, Inc.* 303 F.2d 706, 710 (6th Cir. 1964) (stating that photographs taken "at some distance in time from the occurrence of the event" properly admitted because they were an "accurate portrayal" of conditions at the time of the occurrence); *Croxton v. Duke Power Co.,* 181 F.2d 306, 308-09 (4th Cir. 1950) (photographs taken over a year after an accident were not admissible because they did not show the actual building where the injury occurred, not because of the amount of time that had passed); *Altemus v. Talmadge*, 58 F.2d 874, 879 (D.C. Cir. 1932) (photographs taken several months after an accident were properly admissible when accompanied with evidence that the condition of the pavement had not changed since the accident)); *See also City of Miami v. McCorkle,* 199 So. 575, 577 (Fla. 1941) (photographs of automobile involved in accident admitted even though

---

[5] In this case, Federated Stores has not cited any evidence to demonstrate that the videos do not accurately depict the condition of the stores after Hurricane Wilma.

automobile, as pictured in photographs, had been moved from accident scene to junkyard and the hood had been removed).

Nor do the remaining cases cited by the plaintiff support exclusion of the Held videotapes. In *Holbrook v. Norfolk So. Ry.*, 414 F.3d 739, 745 (7th Cir. 2005), the accident scene photos were excluded because the proponent could not even say "whether any of the proffered photos captured the particular location where [the plaintiff] suffered his fall." *Id.* Even then, the Seventh Circuit reluctantly affirmed, stating "[w]hether or not we think the district court's decision to strike the pictures was wrong, we cannot say that it was unreasonable." *Id.* The photographs in *Freightways, Inc. v. Stafford,* 217 F.2d 831, 837 (8th Cir. 1955), were a staged re-creation of an accident, and the videotaped re-creation did not even involve the same *type* of car, let alone the same car, that was involved in the actual accident. And in *Chicago St. P. M&O Ry Co. v. Rorvig,* 217 F. 953, 955-56 (8th Cir. 1914), "the *only* material issues in the case were the amount and condition of the ice on which the plaintiff fell," so it was not error to exclude photographs taken after the ice had melted.

Federated Stores' argument as to the prejudicial nature of the videotapes fares no better than its arguments as to their relevance. As stated by the former Fifth Circuit:

> Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403. Unless trials are to be conducted on scenarios, on unreal facts tailored and sanitized for the occasion, the application of Rule 403 must be cautious and sparing.

*United States v. McRae,* 593 F.2d 700, 707 (5th Cir. 1979), *cert denied*, 444 U.S. 862 (1979) (fact that trial court characterized photographs as "gross, distasteful and disturbing" did not make them unduly prejudicial for purposes of Rule 403).

The high hurdle plaintiff faces in excluding these videotapes under Rule 403 is demonstrated by *Gomez v. Construction Design, Inc.*, 126 S.W.3d 366 (Mo. 2004). In *Gomez*, the alleged prejudice stemmed not from the length of time that had passed between the accident and the making of the videotape, but more importantly, the videotape showed that the defendant had taken post-accident remedial measures to prevent similar accidents from happening again. Specifically, the videotape showed colored "caution" tape around a hole through which an injured worker had fallen. Despite the inadmissibility of evidence of remedial measures, and despite the prejudicial nature of this evidence to the defendant, the court admitted the video evidence, finding that it was not unduly prejudicial. *Id.* at 374.

## III. THE VOICE NARRATION IS ADMISSIBLE UNDER THE BUSINESS RECORDS EXCEPTION TO THE HEARSAY RULE.

The videotape, including narration, meets the requirements for the business records exception to the hearsay rule. Rule 803(6), Fed. R. Evid. provides:

> **(6) Records of Regularly Conducted Activity –** A memorandum, report, record, or data compilation, *in any form*, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation . . . The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and *calling of every kind*, whether or not conducted for profit.

Fed. R. Evid. 803(6) (emphasis added). The rule contains no exception for audio recordings. Nor does it contain an exception for consultants hired in the ordinary course of their business to assess damaged property for an insurance company. While plaintiff asserts (Plaintiff's Motion in Limine at 7) that "in general" videotapes are inadmissible hearsay, the principal case cited for this proposition involved the videotaping (including audio) of a witness under hypnosis. *Sprynczynatyk v. General Motors*, 771 F.2d 1112 (8th Cir. 1985). Even that case recognizes that

a videotape can be admitted to prove the truth of the matter asserted if it comes within an exception to the hearsay rule. *Id.* at 1117. As long as that exception is met, videotapes that "illustrate any fact, shed light upon any fact or issue in the case, or are relevant to describe the person, place, or thing depicted are generally admissible, provided their probative value outweighs any prejudicial effect." *State v. Martin,* 607 So. 2d 775, 779 (La. Ct. App. 1992).[6]

Plaintiff cites just one case, *Harrington v. Disney Regional Entertainment, Inc.*, No. 06-12226, 2007 WL 3036873, at *6 (11th Cir. Oct. 19, 2007), in support of its contention that the voice narration accompanying the videotape does not fall within the business records exception. *Harrington*, however, is clearly distinguishable. In that case, an employee of ESPN Zone restaurant filed a race discrimination lawsuit, and the employer hired an outside consultant "in the course of a special investigation" to evaluate the management practices of ESPN Zone. *Id*. The court found the report did not constitute a business record because the plaintiff "presented no evidence regarding the creation of the notes and so failed to meet the requirement of Rule 803(6) that a document be kept in the regular course of business." *Id.* Making a videotape of damaged property most certainly is within the ordinary course of Held's business in a claim of this magnitude when two of the three stores were slated to be demolished before the insurance claim had been resolved.[7]

---

[6] Tellingly, Federated Stores has chosen not to depose Johnson. At trial, Federated Stores will be able to question Johnson regarding the videotape.

[7] Alternatively, the narrative is admissible under Rule 803(1), which provides that an out-of-court statement is not excludable as hearsay, whether or not the declarant is available to testify, if the statement "describ[es] or explain[s] an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." *See United States v. Rideout*, No. 02-4302, 2003 WL 22673668, at *5 (4th Cir. Nov. 13, 2003) (unpublished), *judgment vacated and remanded for re-sentencing,* 543 U.S. 1116 (2005) (Police investigator's narration on six-hour composite videotape depicting open air crack cocaine market was admissible in dealer's prosecution for drug conspiracy and distribution as present sense impression).

Plaintiff articulates no reason why the voice narration accompanying the videotape should be treated any differently than the written notes of any other consultant hired by plaintiff or defendant in this case to assess the extent of damage to the insured property. Indeed, handwritten notes are often nothing more than a transcription of a voice narration dictated onto a recording device. The fact that the "notes" were recorded orally as opposed to being preserved in written or transcribed form does not alter the result under the business records exception to the hearsay rule. *See* Fed. R. Evid. 803(6) (defining business record as "memorandum, report, record, or data compilation, *in any form*.") (emphasis added).

Plaintiff attempts to make much of the fact that litigation was possible or even anticipated at the time this business record was created. That fact, however, does not take these business records outside the hearsay exception. *See State v. Crager,* 879 N.E.2d 745, 753 (Ohio 2007) (DNA reports admissible at trial as nontestimonial business records even though "the lab work that produced them was done at the request of the prosecution [and] it was reasonably expected that the reports would be used in a criminal trial.")

Finally, if any portion of the narrative is objectionable, it can be excised at trial,[8] or at the very least, the video portion (without audio) is admissible under the business records exception to the hearsay rule. *See Dep't of Public Safety and Correctional Serv. v. Cole,* 672 A.2d 1115, 1123-24 (Md. 1996) (video of prisoner extracted from cell, created in ordinary course of prison's business, was admitted into evidence as business record "even though no witness testifies that what is depicted on the videotape is a fair and accurate representation of what it purports to show").

[8] *Cf. Food Fair, Inc. v. Anderson,* 382 So. 2d 150, 156 (Fla. 5th DCA 1980) (fact that tape recording contained numerous unintelligible portions was not sufficient to require excluding the intelligible portions of the tape.)

Dated: February 25, 2008

Respectfully submitted by,

Stephen N. Zack, Esq.
szack@bsfllp.com
Jennifer G. Altman, Esq.
jaltman@bsfllp.com
Boies, Schiller & Flexner LLP
100 S.E. Second Street
2800 Bank of America Tower
Miami, Florida 33131
Tel. 305.539.8400
Fax 305.539.1307

and

Carlos M. Sires, Esq.
csires@bsfllp.com
Carl E. Goldfarb, Esq.
cgoldfarb@bsfllp.com
Boies, Schiller & Flexner LLP
401 East Olas Boulevard
Suite 1200
Ft. Lauderdale, Florida 33301
Tel. 954.356.0011
Fax 954.356.0022

By: /s/ Carlos Sires
Carlos M. Sires, Esq.
Fla. Bar No. 319333
Jennifer G. Altman, Esq.
Fla. Bar No. 881384
Carl E. Goldfarb, Esq.
Florida Bar No. 0125891

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 25, 2008, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Carlos Sires
Boies, Schiller & Flexner LLP

**SERVICE LIST**

**Federated Department Stores, Inc. v. Federated Department Stores Insurance Co., Inc.**
**Case No. 06-22147-CIV-KING/GARBER**
**United States District Court, Southern District of Florida**

| | |
|---|---|
| Marco Jimenez, Esq.<br>KENNY NACHWALTER, P.A.,<br>1100 Miami Center<br>201 South Biscayne Boulevard<br>Miami, Florida 33131<br>Telephone: 305-373-1000<br>Facsimile: 305-372-1861<br>mjimenez@kennynachwalter.com<br>*Attorney for Plaintiff Federated Department Stores, Inc.*<br>Served via Notice of Electronic Filing<br><br>Jennifer G. Altman, Esq.<br>Boies, Schiller & Flexner LLP<br>Bank of America Tower<br>100 Southeast 2nd Street<br>Suite 2800<br>Miami, Florida 33131<br>Telephone: 305-539-8400<br>Facsimile: 305-539-1307<br>jaltman@bsfllp.com<br><br>*Attorney for Defendant Federated Department Stores Insurance Co., Inc.*<br><br>Carlos M. Sires, Esq.<br>Boies, Schiller & Flexner LLP<br>401 E. Las Olas Boulevard, Suite 1200<br>Fort Lauderdale, FL 33301<br>Telephone: 954-356-0011<br>Facsimile: 954-356-0022<br>csires@bsfllp.com<br><br>*Attorney for Defendant Federated Department Stores Insurance Co., Inc.* | John Iole, Esq.<br>J.W. Montgomery III, Esq.<br>Rebekah B. Kcehowski, Esq.<br>Neelie S. Simmons, Esq.<br>JONES DAY<br>500 Grant Street, Suite 3100<br>Pittsburgh, Pennsylvania 15219<br>Telephone: 412-394-7914<br>Facsimile: 412-394-7959<br>jeiole@jonesday.com<br>jwmontgomery@jonesday.com<br>rbkcehowski@jonesday.com<br>nssimmons@jonesday.com<br><br>*Attorneys for Plaintiff Federated Department Stores, Inc.*<br>Served via Notice of Electronic Filing |