**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 06-22147-CIV-KING**

FEDERATED DEPARTMENT STORES, INC.,

*Plaintiff,*

v.

FEDERATED DEPARTMENT STORES INSURANCE CO., INC.,

*Defendant.*

---

**REPLY IN SUPPORT OF FEDERATED STORES'**
**MOTION IN LIMINE TO EXCLUDE JS HELD VIDEOS**

The Insurance Company attempts to turn Federal Rule of Evidence 104(a) on its head by arguing that *Federated Stores* failed to show the Videos depict materially improved conditions. However, the Insurance Company – the party offering the evidence – bears the burden of proving the Videos accurately depict the damage at the Big Three Stores. The Insurance Company fails to carry its burden. It cites *no record evidence* proving the Videos accurately reflect the Big Three Stores. Instead, the Insurance Company *concedes* the Videos show significant improvements.

A simple photographic comparison shows the dramatic difference between the Videos and the actual store conditions after Hurricane Wilma:

***Photograph of Galleria Fourth Floor, October 2005*:**




***Video Shot of Galleria, Same Location on Fourth Floor, March 2006*:**



The post-remediation Videos do not accurately reflect the damage to the Big Three Stores. The Videos are therefore inadmissible as irrelevant, confusing, and unduly prejudicial.

Moreover, the Videos contain hearsay. They were prepared in anticipation of litigation, are inherently untrustworthy, and do not qualify under any hearsay exception. The Videos should be excluded.

**I. The Videos Are Irrelevant and Unduly Prejudicial Because They Do Not Accurately Reflect the Damage to the Big Three Stores.**

Under Rule 104(a) of the Federal Rules of Evidence, the party offering evidence must establish its admissibility by a preponderance of the evidence. See, e.g., Bourjaily v. United

States, 483 U.S. 171, 175-76 (1987). Thus, the burden is on the Insurance Company – the party offering the Videos – to show that the Videos accurately reflect the damage to the Big Three Stores. See Fisher v. ARC Housing, LLC, No. 04-61389, 2005 U.S. Dist. LEXIS 45890, at **8-9 (S.D. Fla. Dec. 22, 2005); D.E. 218 at 6 ("The primary legal issue [relevant to admissibility] is whether or not the pictures accurately reflect the scene as it appeared on the date of the accident."). Videotapes are inadmissible when they show a scene or property that is materially and prejudicially changed since the relevant accident or occurrence. Fisher, 2005 U.S. Dist. LEXIS 45890, at **8-9. See also King v. Ford Motor Co., 597 F.2d 436, 445 (5th Cir. 1979) (photographs of chassis taken after its manufacturing was complete excluded because they differed considerably from appearance of partially completed chassis when accident occurred); Bryant v. N. Bank Towing Corp., No. 05-3077, 2006 U.S. Dist. LEXIS 82244, at **3-5 (E.D. La. Nov. 9, 2006) (photographs of engine room excluded when they showed substantial repairs that were not present at time of accident); accord Holbrook v. Norfolk S. Rwy., 414 F.3d 739, 745-46 (7th Cir. 2005); Croxton v. Duke Power Co., 181 F.2d 306, 308-09 (4th Cir. 1950); Chicago St. P. Ry. Co. v. Rorvig, 217 F. 953, 955-56 (8th Cir. 1914).

The Insurance Company argues that Federated Stores failed to prove the Videos show changed and improved conditions. Federated Stores, however, is not required to present evidence of the Big Three Stores' changed condition. It is the Insurance Company that must prove the Big Three Stores in the Videos are not materially improved – a burden which the Insurance Company fails to meet. See, e.g., Bourjaily, 483 U.S. at 175-76.

The Insurance Company fails to cite any evidence establishing the Big Three Stores were in the same condition at the time of Hurricane Wilma and the making of the Videos. Indeed, the Insurance Company *concedes* the properties were, in fact, changed. See D.E. 218 at 3 n.2 ("[T]he narrative by Johnson states that there have been some changes in the stores."). The Videos themselves detail the material improvements made to the Big Three Stores after Hurricane Wilma. See Ex. A (Held-006455 DVD transcript) at ¶ 21 ("It is important to note that the store has underwent some changes on this floor since our first visit in 2005."); Ex. B (Held-006456 DVD transcript) at ¶ 1 ("It appears that all of the dry wall that was damaged has been remediated."); Ex. D (Held-006458 DVD transcript) at ¶ 1 ("[R]emediation . . . has taken place with drywall and possibly ceiling tile."); Ex. C (Held-006257 DVD transcript) at ¶ 40 (noting that "quite a bit of drywall ceiling," lighting fixtures and carpet have been removed); Ex. C

(Held-006457 DVD transcript) at ¶ 3 (describing "remediation efforts that have taken place with the drywall."); Ex. C (Held-006457 DVD transcript) at ¶ 7 (stating that carpeting and wallpaper had been removed and repairs made to prevent water intrusion in human resources department). Because the Insurance Company fails to offer any evidence that the Videos accurately reflect the Big Three Stores after Hurricane Wilma, the Videos must be excluded. See Fisher, 2005 U.S. Dist. LEXIS 45890, at **8-9; King, 597 F.2d at 445; Bryant, 2006 U.S. Dist. LEXIS 82244, at **3-5.

The Insurance Company mischaracterizes the holding of Fisher, 2005 U.S. Dist. LEXIS 45890. While the court in Fisher declined to exclude certain photographs, it did so because the proponent of the photographs cited evidence demonstrating the photos accurately reflected the condition of the premises. Id. at *6. The court excluded all photographs lacking such evidence. Id. at *9. Thus, under Fisher, the Videos must be excluded because the Insurance Company fails to cite *any* evidence demonstrating the Videos accurately reflect the damage at the Big Three Stores.

Federated Stores has never argued that the mere passage of time renders a videotape inadmissible. Rather, Federated Stores argues the Videos should be excluded because they reflect the Big Three Stores *after substantial improvements*. As Fisher makes plain, when a videotape does not accurately reflect a scene, it is irrelevant, unduly prejudicial and inadmissible. Id. at *8.

For the same reasons, the cases cited by the Insurance Company are inapposite. In those cases, there were no prejudicial, material changes between the event and the video or photograph. See, e.g., Jenkins v. Assoc. Transp., Inc., 330 F.2d 706, 710 (6th Cir. 1964) (photograph portrayed scene in the same condition as it existed after accident); Altemus v. Talmadge, 58 F.2d 874, 879 (D.C. Cir. 1932) (condition of pavement reflected in photograph had not changed from the time of accident); Gomez v. Constr. Design, Inc., 126 S.W.3d 366, 374 (Mo. 2004) (video reflected the condition of the scene at the time of the accident).

Here, there is overwhelming evidence that the Big Three Stores were materially improved between Hurricane Wilma and the Videos. For example, photographs taken shortly after the storm show substantial damage not reflected in the Videos. See infra at p.2. Likewise, the time records from Federated Stores' emergency response contractor, Interstate Restoration Group, document substantial remedial repairs and improvements in the months following

Hurricane Wilma. See, e.g., Ex. E (selected pages from Interstate 0626 0000182-708) (describing work performed as, *inter alia*, removing ceiling tiles, carpet and hardwood flooring, clearing merchandise and debris, demolishing walls and sealing parts of the buildings); Ex. F (Interstate 0626 0000325) (invoice describing more than $390,000 of "emergency water damage services and structural drying" in 2005).

The Insurance Company's own experts concede the extent of emergency response and repairs. See Ex. G at 24 (Cole Expert Rep.) ("Interstate's 'work' was intensive, and included water extraction, demolition of water-damaged, and in some cases mold-contaminated, porous materials such as wallboard, ceiling tile, and saturated carpet, and dry-down of the buildings' interior structures."). In addition, various witnesses testified regarding the extent of repair and remediation work before the Videos were made. See Ex. H (McConocha Dep.) at 152 (roof repairs and water extraction conducted in the days following Hurricane Wilma), 217-18 (Federated Stores removed a flooded and moldy stairwell in November 2005), 222 (moldy ceiling drywall removed and discarded); Ex. I (Pangburn Dep.) at 252-54 (water extraction and dehumidification conducted and wet material removed right after Hurricane Wilma struck); Ex. J (Huggins Dep.) at 187 (Interstate removed damaged ceiling tiles and walls right after Hurricane Wilma struck); Ex. K (Kapellas Dep.) at 205-06 (water extraction and removal of wet materials occurred in the days following Hurricane Wilma). Even the Insurance Company admits that there have been changes to the property. See D.E. 218 at 3 n.2 ("[T]he narrative by Johnson states that there have been some changes in the stores.").

The selection and order of presentation of the Videos are also inherently confusing and inaccurate. See Grimes v. Employers Mut. Liability Ins. Co., 73 F.R.D. 607, 610 (D. Alaska 1977) (selective filming "may be the basis for exclusion"). For instance, the video at Held-006455 starts at the fourth floor of the Galleria store, appears to switch to some portion of the Plantation store ("Title 2"), and then returns to another portion of the Galleria store ("Title 3"). Ex. A (Held-006455 DVD transcript). Even the narrator gets confused as to directions and locations. E.g., Ex. D (Held-006458 DVD transcript) at ¶ 31 ("As we walk towards the Style & Co. display area that is actually on the North center section of the building. I misspoke earlier. I referred to it as the South."); Ex. B (Held-006456 DVD transcript) at ¶ 11 ("We are in the northwest section or, rather, northeast section," correcting his prior statements that he was taping the northwest portion of the building); Ex. B (Held-006456 DVD transcript) at ¶ 5 (noting, in the

course of his inspection, "[i]t is important to make a correction in direction. This area is actually the south area."); Ex. B (Held-006456 DVD transcript) at ¶ 14 (noting, more than ten minutes into his inspection, "[t]here needs to be another correction made on direction.").

The narrator also gets confused as to the cause of damage at the Big Three Stores. Ex. B (Held-006456 DVD transcript) at ¶ 18 ("It is unclear if this was done because of remediation."); Ex. A (Held-006455 DVD transcript) at ¶ 42 ("[I]t is uncertain as to what this is from . . . . It is uncertain when this took place."); Ex. A (Held-006455 DVD transcript) at ¶ 15 ("[I]t is unclear as to their cause."); Ex. A (Held-006455 DVD transcript) at ¶ 29 ("It is unclear as to what the reason is for this as it does not appear to be storm related."); Ex. A (Held-006455 DVD transcript) at ¶ 48 ("It is unclear if this was done during remediation or by whom."); Ex. A (Held-006455 DVD transcript) at ¶ 67 ("There is some staining to the carpet. It isn't clear as to what has caused this."); Ex. B (Held-006456 DVD transcript) at ¶ 11 ("It is unclear as to its cause."); Ex. B (Held-006456 DVD transcript) at ¶ 22 ("[I]t is unclear as to why.") Ex. C (Held-006457 DVD transcript) at ¶ 30 ("It is unclear if this is done from patching or if the roof had been patched previous to the storm."). As even the narrator could not correctly identify his location or the cause of damage, the likelihood that the Videos will confuse the jury outweighs any potential probative value. See Fed. R. Evid. 403.

The evidence shows that the Videos reflect the Big Three Stores in substantially different and improved conditions, and, therefore, the Videos are irrelevant and unfairly prejudicial. The Videos are also confusing and misleading. They must be excluded. See Fisher, 2005 U.S. Dist. LEXIS 45890, at **8-9; King, 597 F.2d at 445; Bryant, 2006 U.S. Dist. LEXIS 82244, at **3-5.

## II. The Videos Are Inadmissible Hearsay

The Videos are inadmissible hearsay because they contain out-of-court statements offered to prove the truth of the matters asserted. See Fed. R. Evid. 801(c), 802. The Videos, which the Insurance Company seeks to admit to prove the cause and extent of damages to the properties, contain commentary from Nathan Johnson of JS Held describing the conditions of the Big Three Stores and hypothesizing causes of damage. This is classic hearsay and the Videos should therefore be excluded. See id.

The Videos are not business records because the Insurance Company consultants prepared them in anticipation of litigation. The courts, including the Eleventh Circuit, have unanimously and unequivocally held that records prepared in anticipation of litigation are not

records prepared in the ordinary course of business within the hearsay exception of Federal Rule of Evidence 803(6). See, e.g., PEAT, Inc. v. Vanguard Research, Inc., 378 F.3d 1154, 1160-61 (11th Cir. 2004) (finding reversible error in district court's admission of hearsay evidence under Rule 803(6) when documents were prepared for use in litigation); Noble v. Ala. Dep't of Environ. Mgmt., 872 F.2d 361, 366 (11th Cir. 1989) (holding that district court erred in admitting hearsay evidence under Rule 803(6) when party offering evidence failed to prove letter was not prepared in anticipation of litigation); accord Lust v. Sealy, Inc., 383 F.3d 580, 587-88 (7th Cir. 2004) (excluding memos created to document nonliability because they were not trustworthy); Echo Acceptance Corp. v. Echosphere Corp., 267 F.3d 1068, 1090-91 (10th Cir. 2001) (excluding exhibits that had "all the earmarks of being motivated and generated to further [defendant's] interest with litigation . . . not so far around the corner"); Certain Underwriters v. Sinkovich, 232 F.3d 200, 204-05 (4th Cir. 2000).

The Videos were clearly prepared in anticipation of litigation. The Insurance Company admits it anticipated litigation "in the Fall of 2005":

> Legal counsel was retained shortly after Hurricanes Katrina and Wilma, respectively. ***Litigation with respect to Federated's claim was anticipated in the Fall of 2005*** . . . .

Ex. L (Def.'s Resp. to Interrogs., June 14, 2007) at No. 18 (emphasis added). The Insurance Company and its consultant, JS Held, prepared the Videos in March 2006 – more than four months after the Insurance Company first anticipated litigation. In fact, the day after taping the Videos, JS Held and the adjuster met with legal counsel to strategize about the Federated Stores claim at a pre-planned "Market Meeting." See Ex. M (Held-013136, Held-006785, Held-06791-92). See also Ex. N (Held-003705 – 07) (adjuster email stating that he wants JS Held's help to "get [Federated Stores] ***on their heels***") (emphasis added). Thus, JS Held's inspections, including videotaping, occurred in the midst of meetings with legal counsel and anticipated litigation. See also Ex. O (Resp. to Reqs. for Admission, Nov. 29, 2007) at Nos. 45-48.

The hearsay rules prevent statements that present risks of insincerity and faulty narration, memory and perception. When a report is prepared in anticipation of litigation, it lacks the trustworthiness necessary for hearsay exceptions to apply. Certain Underwriters, 232 F.3d at 204-05. Here, the Videos were prepared in anticipation of litigation and are "dripping with motivations to misrepresent." Hoffman v. Palmer, 129 F.2d 976, 991 (2d Cir. 1942), aff'd Palmer v. Hoffman, 318 U.S. 109, 111-14 (1943).

For example, in Certain Underwriters, the defendant insurance company hired an outside insurance adjuster to investigate the facts and circumstances surrounding an accident that damaged insured property. Id. at 202-06. The adjuster prepared a report, which the trial court admitted as a business record. Id. On appeal, the plaintiff argued the trial court erred because it was prepared with an eye towards litigation. Id. at 204. The court agreed, holding that the trial court abused its discretion by admitting the report. Id. at 204-06.

Moreover, the Fourth Circuit in Certain Underwriters rejected the very argument the Insurance Company makes here; namely that JS Held creates videos of damaged property in the normal course of its business:

> Underwriters, however, argue that the prohibition against admitting records prepared in anticipation of litigation does not apply here because Underwriters . . . . contracted an outside investigator (Geary) to prepare the report, and Geary regularly prepares and maintains a file of such reports as part of his ordinary course of investigating. We find this argument unpersuasive.

See id. at 205. This Court should reach the same result and exclude the Videos.

The cases cited by the Insurance Company are easily distinguishable. None of those cases interpreted or applied Federal Rule of Evidence 803(6); all are state court cases applying state evidentiary rules. See generally State v. Crager, 879 N.E.2d 745 (Ohio 2007); Dept' of Pub. Safety v. Cole, 672 A.2d 1115 (Md. 1996); Food Fair, Inc. v. Anderson, 382 So.2d 150 (Fla. Ct. App. 1980). Moreover, Cole did not involve a video prepared in anticipation of litigation; the video at issue was a recording of the removal of an inmate from a cell – standard practice at the prison. 672 A.2d at 1118-19. Crager involved DNA lab results, not a calculated, evaluative record prepared for litigation. 879 N.E.2d at 751-54. The DNA results, which were scientific, quantitative test results, possessed the requisite reliability and trustworthiness for admission into evidence. Id. Lastly, Food Fair actually supports Federated Stores, as the Food Fair court reversed the trial court's admission of an entire audio tape replete with hearsay. 382 So.2d at 156.

The Videos are also not admissible as "present sense impressions." See Schindler v. Seiler, 474 F.3d 1008, 1011 (7th Cir. 2007); Vitek Sys., Inc. v. Abbott Labs., 675 F.2d 190, 194 (8th Cir. 1982); Triestman v. Fed. Bureau of Prisons, 96-CV-1125, 1998 U.S. Dist. LEXIS 4507, at **1-2 (N.D.N.Y. Mar. 30, 1998). "The underlying theory of the present sense impression exception is that substantial contemporaneity of event and statement negate the likelihood of

deliberate or conscious misrepresentation." Fed. R. Evid. 803(1), Advisory Comm. Notes. Accordingly, for a statement to qualify as a present sense impression, it must describe an event or condition *without calculated narrative*. See, e.g., Schindler, 474 F.3d at 1011 (rejecting as "calculated narration" hearsay from a "declarant who deliberates about what to say or provides statements for a particular reason"). In addition, statements made in an effort to *evaluate* the perceived event or condition are not present sense impressions under Rule 803(1). See Vitek Sys., 675 F.2d at 194. Thus, a declarant who provides statements for a particular purpose is providing *a calculated interpretation or narration* of events, rather than his contemporaneous perceptions, and the statements are not present sense impressions. Schindler, 474 F.3d at 1011. For that reason, statements made in anticipation of litigation are not trustworthy and are not present sense impressions under Rule 803(1). See, e.g., Triestman, 1998 U.S. Dist. LEXIS 4507, at **1-2.

Indeed, the Videos are filled with calculated narration on the "cause" of damage and the state of the Big Three Stores. Mr. Johnson regularly interjects his uninformed evaluations and opinions. See, e.g., Ex. A (Held-006455 DVD) at ¶ 15 ("The marble floor in this area is scratched but appears to be in relative [sic] good condition as the scratches appear to be surface only."); Ex. A (Held-006455 DVD) at ¶ 42 ("You will notice on the deck plating of the floor we can see rust corrosion. This appears to be from the machinery itself."); Ex. A (Held-006455 DVD transcript) at ¶ 14 ("It is unclear as to [steelwork's] purpose other than it appears to be merely decorative . . . although an engineer would be able to clarify."); Ex. A (Held-006455 DVD transcript) at ¶ 54 ("It is important to note the damage that exists in the soffit ceiling which appears to be from display hanging and other means. It does not appear to be from the storm."); Ex. B (Held-006456 DVD transcript) at ¶ 37 ("We will also notice on the wood flooring in this area what appears to be previous damage . . . that took place before Hurricane Wilma."); Ex. D (Held-006458 DVD) at ¶ 18 ("Around the area of staining, it appears the stains have been taken place over a long period [of time]."); Ex. D (Held-006458 DVD) at ¶ 25 ("[N]o damage in the way of dirt or anything along those lines appears on the wall from the storm.").

The Insurance Company's single case involves a videotape with audio of a police officer describing what he is taping. See United States v. Rideout, 80 Fed. App'x 836, 838 (4th Cir. 2003). This is different from the Videos, which contain an evaluative narration for use in litigation; unlike the audio in Rideout, the narrative in the Videos includes none of the hallmarks

of trustworthiness expected from a present sense impression. See, e.g., Schindler, 474 F.3d at 1011 (statements calculated for a particular purpose are not present sense impressions); Vitek Sys., 675 F.2d at 194 (statements evaluating the event or conditions the declarant is perceiving are not present sense impressions).

**III. Conclusion**

The Court should exclude the Videos created by JS Held several months after the Big Three Stores underwent extensive repairs and remediation because they are irrelevant, confusing, and unfairly prejudicial. In addition, the Videos are inadmissible hearsay under the Federal Rules of Evidence.

Dated: March 6, 2008

Respectfully submitted,

/s/ Marcos Daniel Jiménez

Marcos Daniel Jiménez
Fla. Bar. No. 441503
KENNY NACHWALTER, P.A.
201 South Biscayne Blvd.
1100 Miami Center
Miami, FL 33131
Telephone: (305) 373-1000
Facsimile: (305) 372-1861
Email: mjimenez@kennynachwalter.com

J.W. Montgomery, III
John E. Iole
Neelie Simmons
Rebekah B. Kcehowski
JONES DAY
500 Grant Street, Suite 3100
Pittsburgh, PA 15219-2502
Telephone: (412) 391-3939
Facsimile: (412) 394-7959
E-mail: jwmontgomery@jonesday.com
jeiole@jonesday.com
nssimmons@jonesday.com
rbkcehowski@jonesday.com

***Counsel for Plaintiff Federated Department Stores, Inc.***

**CERTIFICATE OF SERVICE**

I hereby certify that on March 6, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on counsel of record identified in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: /s/ Marcos Daniel Jiménez



PII-1172342v3